# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARBINGER CAPITAL PARTNERS LLC,
HGW US HOLDING COMPANY LP, BLUE
LINE DZM CORP., HARBINGER CAPITAL
PARTNERS SP, INC.,

                *Plaintiffs*,

    v.

CHARLES W. ERGEN, DISH NETWORK
CORPORATION, L-BAND ACQUISITION LLC,
SP SPECIAL OPPORTUNITIES LLC, SPECIAL
OPPORTUNITIES HOLDINGS, LLC, SOUND
POINT CAPITAL MANAGEMENT LP,
STEPHEN KETCHUM,

                *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 15 Civ. 5722

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS THE COMPLAINT

Tariq Mundiya
James C. Dugan
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
*Counsel for Defendants Charles W. Ergen, SP*
*Special Opportunities LLC, and Special*
*Opportunities Holdings LLC*

Robert J. Giuffra, Jr.
Brian T. Frawley
Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
*Counsel for Defendants DISH Network*
*Corporation and L-BAND Acquisition, LLC*

Charles Bachman
Peter Friedman
O'MELVENY & MYERS LLP
7 Times Square Tower
New York, New York 10036
*Counsel for Sound Point Capital Management*
*L.P. and Stephen Ketchum*

November 2, 2015

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...................................................................................1

**ALLEGATIONS OF THE COMPLAINT** .................................................................6

    A.    LightSquared Initiates the Bankruptcy Cases ...........................................6

    B.    SPSO Acquires LightSquared Debt ..........................................................8

    C.    Mr. Ergen and Later DISH Bid for LightSquared's L-Band Spectrum .................8

    D.    The Bankruptcy Court Orders the Appointment of the LightSquared Special Committee ...........................................................................10

    E.    LightSquared Special Committee's Decisions and the LBAC Bid Termination ...........................................................................................12

    F.    The Adversary Proceeding ......................................................................13

    G.    Harbinger Seeks to Present the Same Claims to This Court on Appeal from the Bankruptcy Court ....................................................................15

    H.    The Bankruptcy Court's Prior Rejection of the "Falcone" Plan .............16

    I.    Harbinger Files the Colorado Action ......................................................17

    J.    The Dismissal of the Colorado Action ....................................................18

    K.    Harbinger Declines to Appeal and Files the Instant Action ...................20

    L.    Harbinger Seeks the Same Damages in a Flurry of Other Litigation .................21

    M.    The Bankruptcy Proceedings Are Ongoing .............................................21

**LEGAL STANDARD** ...............................................................................................22

**ARGUMENT** ............................................................................................................22

I.    **THIS ACTION IS BARRED IN ITS ENTIRETY BY *RES JUDICATA*** ..................22

    A.    This Action is Barred by Claim Preclusion ............................................23

    B.    Harbinger Is Bound by the Colorado Court's Claim-Splitting and Collateral Attack Rulings Under the Doctrine of Issue Preclusion .................25

**TABLE OF CONTENTS (cont'd)**

C.      Harbinger Cannot Avoid the Preclusive Effect of the Colorado Court's Decision by Re-Filing its Claims in This Court....................................................28

II.     **HARBINGER'S CLAIMS ARE INDEPENDENTLY BARRED BY THE RULE AGAINST CLAIM-SPLITTING AND THE DOCTRINE OF COLLATERAL ATTACK** ................................................................................................30

A.      Harbinger May Not Relitigate for a *Third* Time Claims Based on the Facts at Issue in the Adversary Proceeding.......................................................30

B.      Harbinger's Claims Still Are an Impermissible Collateral Attack on the Bankruptcy Court's Rulings .................................................................................35

III.    **HARBINGER HAS FAILED TO PLEAD A PLAUSIBLE CIVIL RICO CLAIM**.....................................................................................................................37

A.      Harbinger Pleads No Plausible Injury..................................................................38

B.      Harbinger Has Not Alleged a Direct Causal Connection Between the Alleged Predicate Acts and Injury ........................................................................41

C.      Harbinger Has Not Alleged a "Pattern" of Racketeering Activity .......................44

D.      The Complaint Does Not Adequately Allege that Defendants Committed Any RICO Predicate Acts ....................................................................................47

        1.      Harbinger Does Not Adequately Allege Wire Fraud...............................47

                a.      Harbinger Cannot Claim SPSO Misrepresented that it Was an Eligible Assignee under the Credit Agreement.........................48

                b.      The Complaint Does Not Plausibly Allege that Statements Made in Connection with LBAC's Bid Were Fraudulent ...........49

        2.      The Complaint Fails to Allege Bankruptcy Fraud ....................................50

        3.      The Complaint Fails to Allege Obstruction of Justice..............................53

E.      Neither DISH, LBAC nor the Sound Point Defendants Directed Any Enterprise ...........................................................................................................54

        1.      Neither DISH nor LBAC Directed Any Enterprise ..................................55

        2.      The Complaint Fails to Plead that the Sound Point Defendants Directed the RICO Enterprise ...............................................................55

IV.     **HARBINGER FAILS TO PLEAD A RICO CONSPIRACY CLAIM** ......................57

**TABLE OF CONTENTS (cont'd)**

*Page*

**V.    HARBINGER'S STATE LAW CLAIMS SHOULD BE DISMISSED** .....................57

    A.    The Complaint Does Not Adequately Allege a COCCA Claim..........................58

    B.    Harbinger Fails to State a Claim for Tortious Interference with Contract ...........58

    C.    The Complaint Fails to State a Claim for Abuse of Process ...............................60

**CONCLUSION** ..........................................................................................................61

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

*Agency Holding Corp.* v. *Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987)......................................................................................44

*Ali* v. *Mukasey*,
  529 F.3d 478 (2d Cir. 2008)........................................................................26

*Am. Stock Exch., LLC* v. *Mopex, Inc.*,
  215 F.R.D. 87 (S.D.N.Y. 2002) ..............................................................30, 34

*AmBase Corp.* v. *City Investing Co. Liquidating Trust*,
  326 F.3d 63 (2d Cir. 2003)..........................................................................31

*Anza* v. *Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).....................................................................................41

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).....................................................................................22

*Avalos* v. *IAC/Interactivecorp.*,
  2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) .............................................43

*Bastian* v. *Petren Res. Corp.*,
  892 F.2d 680 (7th Cir. 1990) ......................................................................42

*Beauvoir* v. *Israel*,
  2015 WL 4429757 (2d Cir. July 21, 2015).................................................6

*Beck* v. *Prupis*,
  529 U.S. 494 (2000).....................................................................................57

*Berrios* v. *N.Y.C. Hous. Auth.*,
  564 F.3d 130 (2d Cir. 2009).........................................................................24

*Brandenburg* v. *Seidel*,
  859 F.2d 1179 (4th Cir. 1988) .....................................................................41

*Bridge* v. *Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)......................................................................................44

*Broyles* v. *Wilson*,
  1993 WL 347222 (5th Cir. Aug. 19, 1993)..................................................50

## TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*BWP Media USA Inc.* v. *Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014)....................................................5, 57

*Cameron* v. *Church*,
    253 F. Supp. 2d 611 (S.D.N.Y. 2003).....................................................33

*Carr* v. *Tillery*,
    591 F.3d 909 (7th Cir. 2010) ................................................................49

*Catalano* v. *Applied Biometric Prods., Inc.*,
    2003 WL 22004902 (S.D.N.Y. Aug. 25, 2003) ....................................35

*Celotex Corp.* v. *Edwards*,
    514 U.S. 300 (1995)...............................................................................35

*Chicot County Drainage Dist.* v. *Baxter State Bank*,
    308 U.S. 371 (1940)...............................................................................35

*Cimerring* v. *Merrill Lynch Mortg. Investors, Inc.*,
    2012 WL 2332358 (Sup. Ct., Kings Cnty. June 13, 2012) ...................61

*Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*,
    126 F.3d 365 (2d Cir. 1997)...................................................................23

*Cont'l Petroleum Corp., Inc.* v. *Corp. Funding Partners, LLC*,
    2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)........................................47

*Cooper* v. *Principi*,
    71 F. App'x 73 (1st Cir. 2003)..........................................................25, 26

*Copeland* v. *Fortis*,
    2010 WL 2102454 (S.D.N.Y. May 20, 2010) ......................................25

*Crawford* v. *Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014)..............................................................46, 47

*Credit Lyonnais Bank Nederland, N.V.* v. *Pathe Commc'ns Corp.*,
    1991 WL 277613 (Del. Ch. Dec. 30, 1991).........................................11

*CRT Invs., Ltd.* v. *BDO Seidman, LLP*,
    925 N.Y.S.2d 439 (1st Dept. 2011) ......................................................56

*D. Penguin Bros.* v. *City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014) ..........................................................57

# TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*DeSilva* v. *North Shore-Long Island Jewish Health Sys., Inc.*,
  770 F. Supp. 2d 497 (E.D.N.Y. 2011) ....................................................41

*Diaz* v. *Judge Advocate Gen. of the Navy*,
  413 F. App'x 342 (2d Cir. 2011) ..........................................................25

*Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*,
  600 F.3d 190 (2d Cir. 2010)..............................................................23, 25, 26

*Dubai Islamic Bank* v. *Citibank, N.A.*,
  256 F. Supp. 2d 158 (S.D.N.Y. 2003)....................................................55

*Elfenbein* v. *Gulf & Western Indus., Inc.*,
  590 F.2d 445 (2d Cir. 1978)................................................................24

*Evercrete Corp.* v. *H-Cap Ltd.*,
  429 F. Supp. 2d 612 (S.D.N.Y.).............................................................46

*Federated Stores, Inc.* v. *Moitie*,
  452 U.S. 394 (1981)...........................................................................23

*First Capital Mgmt., Inc.* v. *Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)...............................................................51

*First Nationwide Bank* v. *Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)................................................................43

*Floyd* v. *Coors Brewing Co.*,
  952 P.2d 797 (Colo. App. 1997) .........................................................58

*Goldfine* v. *Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000)....................................................57

*Goodwin* v. *Bruggeman-Hatch*,
  2014 WL 3057198 (D. Colo. July 7, 2014) ............................................58

*H.J. Inc.* v. *Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989).........................................................................44, 45, 46

*Harbinger Capital Partners LLC* v. *Ergen*,
  __ F. Supp. 3d __, 2015 WL 2128901 (D. Colo. Apr. 28, 2015) ..................... *passim*

*Harbinger Capital Partners LLC* v. *Ergen*,
  504 B.R. 321 (Bankr. S.D.N.Y. 2013).................................................... *passim*

## TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*Hayden* v. *Paul, Weiss, Rifkind, Wharton & Garrison*,
    955 F. Supp. 248 (S.D.N.Y. 1997) .........................................................56

*Heiser* v. *Woodruff*,
    327 U.S. 726 (1946) .............................................................................. 22-23

*Hemi Grp., LLC* v. *City of N.Y.*,
    559 U.S. 1 (2010) ..............................................................37, 38, 41, 52

*Illinois* v. *Brown*,
    227 F.3d 1042 (7th Cir. 2000) ...........................................................43

*In re Acequia, Inc.*,
    787 F.2d 1352 (9th Cir. 1986) ...........................................................39

*In re Am. Basketball League, Inc.*,
    317 B.R. 121 (Bankr. N.D. Cal. 2004) .............................................36

*In re Baillio*,
    2010 WL 3782065 (Bankr. D.N.M. Sept. 21, 2010) .........................50

*In re Bennett Funding Grp., Inc.*,
    367 B.R. 302 (Bankr. N.D.N.Y. 2007) .............................................42

*In re Christ Hosp.*,
    502 B.R. 158 (Bankr. D.N.J. 2013) ...................................................37

*In re DBSD N. Am., Inc.*,
    634 F.3d 79 (2d Cir. 2011) .................................................................45

*In re Gaslight Club, Inc.*,
    782 F.2d 767 (7th Cir. 1986) .............................................................39

*In re Granite Broad. Corp.*,
    369 B.R. 120 (Bankr. S.D.N.Y. 2007) .............................................50

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ..............................................52

*In re LightSquared, Inc.*,
    513 B.R. 56 (Bankr. S.D.N.Y. 2014) ..................................... *passim*

*In re LightSquared, Inc.*,
    534 B.R. 522 (S.D.N.Y. 2014) ............................................... *passim*

## TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*In re LightSquared, Inc.*,
  No. 12-12080 (Bankr. S.D.N.Y.) ................................................................. *passim*

*Indus. Bank of Latvia* v. *Baltic Fin. Corp.*,
  1994 U.S. Dist. LEXIS 8580 (S.D.N.Y. June 27, 1994)..............................56

*Israel* v. *Wood Dolson Co.*,
  134 N.E.2d 97 (N.Y. 1956)..........................................................................60

*Jennings* v. *Auto Meter Prods., Inc.*,
  495 F.3d 466 (7th Cir. 2007) .......................................................................53

*Johnson* v. *Manhattan Ry. Co.*,
  289 U.S. 479 (1933).....................................................................................35

*Kel Kim Corp.* v. *Cent. Mkts., Inc.*,
  519 N.E.2d 295 (N.Y. 1987)........................................................................59

*Kerik* v. *Tacopina*,
  64 F. Supp. 3d 542 (S.D.N.Y. 2014)............................................................38

*Kimm* v. *Chang Hoon Lee & Champ, Inc.*,
  196 F. App'x 14 (2d Cir. 2006) ..............................................................37, 41

*Kirschner* v. *Agoglia*,
  476 B.R. 75 (S.D.N.Y. 2012)......................................................................28

*Lama Holding Co.* v. *Smith Barney Inc.*,
  668 N.E.2d 1370 (N.Y. 1996)......................................................................58

*LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*,
  951 F. Supp. 1071 (S.D.N.Y. 1996).............................................................54

*Lerner* v. *Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006).....................................................................48, 49

*Lexmark Intern., Inc.* v. *Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) .................................................................................14

*LightSquared LP* v. *SP Special Opportunities LLC*,
  511 B.R. 253 (Bankr. S.D.N.Y. 2014).................................................. *passim*

*Makowski* v. *United Bhd. of Carpenters & Joiners of Am.*,
  2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010).............................................38, 41

## TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*McLaughlin* v. *Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ............................................................. 40

*McNally* v. *Colorado State Patrol*,
    122 F. App'x 899 (10th Cir. 2004) ............................................. 25, 29

*Med. Supply Chain, Inc.* v. *Neoforma, Inc.*,
    419 F. Supp. 2d 1316 (D. Kan. 2006) ............................................ 53

*Miller* v. *Meinhard-Commercial Corp.*,
    462 F.2d 358 (5th Cir. 1972) ...................................................... 19, 36

*Miller* v. *Wells Fargo Bank, N.A.*,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014) ............................................ 37

*Monahan* v. *N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ............................................................ 23

*Montana* v. *United States*,
    440 U.S. 147 (1979) ......................................................................... 22

*N. Shipping Funds I, L.L.C.* v. *Icon Capital Corp.*,
    2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013) ............................ 58, 59

*N.Y.C.* v. *FedEx Ground Package Sys., Inc.*,
    91 F. Supp. 3d 512, 524 (S.D.N.Y. 2015) ...................................... 54

*New Hampshire* v. *Maine*,
    532 U.S. 742 (2001) ......................................................................... 23

*Oakley Fertilizer Inc.* v. *Hagrpota for Trading & Distribution, Ltd.*,
    2012 WL 5844193 (S.D.N.Y. Nov. 16, 2012) ................................ 39

*Oneida Tribe of Indians of Wis.* v. *AGB Props., Inc.*,
    2002 WL 31005165 (N.D.N.Y. Sept. 5, 2002) ............................... 27

*Pelullo* v. *Nat'l Union Fire Ins. Co. of Pittsburgh*,
    2004 WL 1102782 (E.D. Pa. May 17, 2004) ................................... 54

*People* v. *McGlotten*,
    166 P.3d 182 (Colo. App. 2007) ..................................................... 58

*Pier Connection, Inc.* v. *Lakhani*,
    970 F. Supp. 72 (S.D.N.Y. 1995) .................................................... 46

## TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*Planetarium Travel, Inc.* v. *Altour Intern., Inc.*,
   2015 WL 1209524 (S.D.N.Y. 2015) ................................................22

*Pratt* v. *Ventas, Inc.*,
   365 F.3d 514 (6th Cir. 2004) .........................................................36

*Prime Mgmt. Co.* v. *Steinegger*,
   904 F.2d 811 (2d Cir. 1990) ...........................................................32

*Proctor* v. *LeClaire*,
   715 F.3d 402 (2d Cir. 2013) ......................................................25, 27

*Pure Power Boot Camp, Inc.* v. *Warrior Fitness Boot Camp, LLC*,
   813 F. Supp. 2d 489 (S.D.N.Y. 2011) .............................................58

*Rafferty* v. *Halprin*,
   1991 WL 148798 (S.D.N.Y. July 26, 1991) ....................................50

*Ray Larsen Assocs., Inc.* v. *Nikko Am., Inc.*,
   1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) .....................................45

*Redtail Leasing, Inc.* v. *Belleza*,
   1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ...................................55

*Reich* v. *Lopez*,
   38 F. Supp.3d 436, 452 (S.D.N.Y. 2014) .............................44, 45, 46

*Reves* v. *Ernst & Young*,
   507 U.S. 170 (1993) ........................................................................54

*Richmark Corp.* v. *Timber Falling Consultants, Inc.*,
   730 F. Supp. 1525 (D. Or. 1990) ....................................................53

*Rodriguez-Gutierrez* v. *INS*,
   59 F.3d 504 (5th Cir. 1995) ............................................................52

*Schlaifer Nance & Co.* v. *Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997) .............................................................44

*Schupak* v. *Califano*,
   454 F. Supp. 105 (E.D.N.Y. 1978) .................................................39

*Sedima* v. *Imrex Co.*,
   473 U.S. 479 (1985) ........................................................................46

## TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*Semtek Intern. Inc.* v. *Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ................................................................................24

*Singh* v. *Parnes*,
    199 F. Supp. 2d 152 (S.D.N.Y. 2002) ....................................................32

*Sky Medical Supply Inc.* v. *SCS Support Claims Servs., Inc,*
    17 F. Supp. 3d 207, 234 (E.D.N.Y. 2014) .............................................43

*Spartan Mills* v. *Bank of Am. Ill.*,
    112 F.3d 1251 (4th Cir. 1997) ...............................................................36

*Taylor* v. *Sturgell*,
    553 U.S. 880 (2008) ................................................................................22

*Tech. in P'ship* v. *Rudin*,
    2011 U.S. Dist. LEXIS 114127 (S.D.N.Y. Oct. 3, 2011) .......................55

*Teltronics Servs., Inc.* v. *LM Ericsson Tele., Inc.*,
    642 F.2d 31 (2d Cir. 1981) .....................................................................24

*Tenore* v. *Kantrowitz, Goldhamer & Graifman, P.C.*,
    76 A.D.3d 556 (2d Dept. 2010) ........................................................60, 61

*Torres* v. *City of N.Y.*,
    248 F. Supp. 2d 333 (S.D.N.Y. 2003) ....................................................57

*Trenwick Am. Litig. Trust* v. *Ernst & Young*,
    906 A.2d 168 (Del. Ch. 2006) ................................................................39

*Tsipouras* v. *W&M Properties, Inc.*,
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) ........................................................41

*Turk* v. *Angel*,
    293 A.D.2d 284 (1st Dept. 2002) ............................................................60

*U.S. Fire Ins. Co.* v. *United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) ....................................................57

*United States* v. *Aguilar*,
    515 U.S. 593 (1995) ................................................................................53

*United States* v. *Autuori*,
    212 F.3d 105 (2d Cir. 2000) ...................................................................47

# TABLE OF AUTHORITIES (cont'd)

*Page(s)*

*United States* v. *Daidone,*
   471 F.3d 371 (2d Cir. 2006)......................................................................45

*United States* v. *Pierce,*
   224 F.3d 158 (2d Cir. 2000)......................................................................47

*United States* v. *Quattrone,*
   441 F.3d 153 (2d Cir. 2006)......................................................................53

*United States* v. *Sabbeth,*
   262 F.3d 207 (2d Cir. 2001)................................................................. 51-52

*Waldman* v. *Village of Kiryas Joel,*
   207 F.3d 105 (2d Cir. 2000)..............................................................30, 33

*Way* v. *Georgiades,*
   1997 WL 196647 (9th Cir. Apr. 21, 1997) ...............................................37

*Weldon* v. *United States,*
   70 F.3d 1 (2d Cir. 1995)............................................................................51

*Weston Funding Corp.* v. *Lafayette Towers, Inc.,*
   410 F. Supp. 980 (S.D.N.Y. 1976) ...........................................................24

*Winters* v. *Lavine,*
   574 F.2d 46 (2d Cir. 1978).........................................................................27

*Woods* v. *Dunlop Tire Corp.,*
   972 F.2d 36 (2d Cir. 1992).........................................................................30

*Yaba* v. *Roosevelt,*
   961 F. Supp. 611 (S.D.N.Y. Apr. 16, 1997) .............................................34

*Zdanok* v. *Glidden Co., Durkee Famous Foods Div.,*
   327 F.2d 944 (2d Cir.), *cert. den.,* 377 U.S. 934 (1964)..................... 39-40

## STATUTES

11 U.S.C. §§ 105.................................................................................................59

11 U.S.C. § 1107(a) ......................................................................................38, 59

18 U.S.C. § 152.................................................................................................51

18 U.S.C. § 157.................................................................................................51

**TABLE OF AUTHORITIES (cont'd)**

*Page(s)*

18 U.S.C. § 1341 ...........................................................................................................18

18 U.S.C. § 1343 ...........................................................................................................18

18 U.S.C. § 1502(a) .......................................................................................................52

18 U.S.C. § 1961(1) ..................................................................................................46, 51

18 U.S.C. § 1962(c) ................................................................................................. *passim*

28 U.S.C. § 1367 ...........................................................................................................57

**RULES**

Fed. R. Civ. P. 9(b) ...........................................................................................5, 49, 51, 56

Fed. R. Civ. P. 60(b)(3) ...................................................................................................35

Fed. R. Civ. P. 12(b)(6) ..............................................................................................13, 21

Defendants DISH Network Corporation ("DISH"), L-BAND Acquisition, LLC ("LBAC"), Charles W. Ergen, SP Special Opportunities LLC ("SPSO"), Special Opportunities Holdings LLC ("SOH"), Sound Point Capital Management LP ("Sound Point") and Stephen Ketchum (together with Sound Point, the "Sound Point Defendants") (collectively, the "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss the Complaint filed by Plaintiffs Harbinger Capital Partners LLC, HGW US Holding Company LP, Blue Line DZM Corp. and Harbinger Capital Partners SP, Inc. (collectively, "Harbinger").

## PRELIMINARY STATEMENT

This action—Harbinger's *third* attempt to challenge the same events in three different federal courts—is identical in every relevant respect to its action filed in Colorado federal district court last July against the same Defendants, alleging the very same federal and state claims (the "Colorado Action"). In a carefully reasoned April 2015 opinion, the Colorado district court (the "Colorado Court") dismissed as a matter of law these very same claims. *Harbinger Capital Partners LLC* v. *Ergen*, __ F. Supp. 3d __, 2015 WL 2128901 (D. Colo. Apr. 28, 2015) ("*Harbinger Colo.*"). Harbinger then appealed from that final judgment to the United States Court of Appeals for the Tenth Circuit, but then moved, the day after filing this action in this Court, to dismiss its appeal with prejudice. Under settled principles of *res judicata*, this action is barred on its face by the dismissal on the merits of the same claims by the Colorado Court. And, in any event, Harbinger's serial claims are fatally defective for the same reasons that the Colorado Court dismissed its same claims, and a host of other reasons that the Colorado Court had no occasion to address.

This action, as with its defective predecessors, arises out of Harbinger's failed investment of almost $2 billion in LightSquared Inc. and its affiliates (collectively,

"LightSquared"), the bankrupt owner of currently unusable wireless spectrum.  Harbinger, a faltering hedge fund founded and run by Philip Falcone, has been embroiled in litigation over LightSquared for some time.  In May 2012, shortly after the U.S. Federal Communications Commission ("FCC") gave notice of its intent to suspend LightSquared's conditional license to use its spectrum because of interference with military and civilian navigation systems, LightSquared filed for bankruptcy.  Since then, Harbinger has sought to shift the blame for its investors' losses, even though it has no one to blame but itself for those losses.

Harbinger and Falcone have pursued a scorched earth litigation strategy against Defendants in the U.S. Bankruptcy Court for this District (the "Bankruptcy Court"), including twice suing some or all of the defendants here in the Bankruptcy Court alleging overlapping tort claims seeking the same damages for the same supposed injuries.  Insofar as relevant here, the Bankruptcy Court rejected those claims.[1]  Separately, in August 2013, Harbinger sued the entire GPS industry in this Court, alleging the same damages from LightSquared's inability to use its spectrum.  In July 2014, upping the ante, Harbinger sued the federal government in the U.S. Court of Federal Claims, again seeking the same damages and asserting that the FCC itself was responsible for Harbinger's failed LightSquared investment.

Right before suing the federal government, Harbinger filed the Colorado Action, again seeking to recover the same failed LightSquared investment.  Harbinger reframed its allegations, which it litigated (and lost) in the Bankruptcy Proceedings, as claims under the

---

[1]     LightSquared's bankruptcy cases are being jointly administered in proceedings captioned *In re LightSquared, Inc.*, No. 12-12080 (Bankr. S.D.N.Y.) (the "Bankruptcy Cases").  Certain of the parties here are parties to a related adversary proceeding before the Bankruptcy Court captioned *LightSquared LP* v. *SP Special Opportunities LLC*, Adv. Proc. No. 13-01390 (Bankr. S.D.N.Y) (the "Adversary Proceeding" and together with the Bankruptcy Cases, the "Bankruptcy Proceedings").

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), and the Colorado Organized Crime Control Act, Colo. Rev. Stat. §§ 18-17-101 *et seq.* ("COCCA"), as well as claims of tortious interference with contract and abuse of process.  Harbinger claimed that Defendants had engaged in some scheme to "strip" Harbinger of certain "control rights" under a Stockholders' Agreement among LightSquared and its shareholders, including Harbinger (the "Stockholders' Agreement"), so DISH could obtain LightSquared's spectrum assets—which acquisition never happened.  (Decl. of Brian D. Glueckstein, Ex. A ("Colo. Compl.") ¶ 9.)

Once LightSquared sought chapter 11 bankruptcy protection, LightSquared's fiduciary obligations to its creditors did not permit Harbinger and Falcone to continue to cause LightSquared to protect Harbinger's shareholder interests at the expense of creditors.  For this reason, the Bankruptcy Court ordered that an independent special committee make material decisions relating to LightSquared's restructuring—precisely for the purpose of preventing Harbinger from exercising control over LightSquared for its own benefit (the "Special Committee Order").  In other words, an Order of the Bankruptcy Court—not Defendants—stripped Harbinger of the "control rights" upon which its present case rests.

For this reason, among others, on April 28, 2015, United States District Judge William Martinez granted Defendants' motion to dismiss the Colorado Action as a matter of law, ruling for Defendants and against Harbinger on the same legal defects that permeate Harbinger's Complaint in this action.  Harbinger filed but later dismissed with prejudice its appeal from Judge Martinez's ruling.  Judge Martinez held that the claims in the Colorado Action violated the prohibition on claim splitting, and were an improper collateral attack on the Special Committee Order.  The court ruled that Harbinger could not pursue a separate civil action in federal court after having litigated similar claims in the Adversary Proceeding, finding that Harbinger's

argument that its claims "ar[o]se from different transactions and seek entirely different relief based on violations of different rights" was "meritless." *Harbinger Colo.*, 2015 WL 2128901, at *9.  For similar reasons, Judge Martinez held that Harbinger's claims were a legally defective collateral attack on the Special Committee Order because "to succeed in this lawsuit on any theory, Harbinger would need to prove that the Special Committee Order was improperly obtained," and "Harbinger may not do so in this Court."  *Id*. at *11.  Judge Martinez dismissed the Colorado Action "without prejudice to Harbinger re-filing its claims in an appropriate forum."  *Id*. at *12.  The Colorado judgment of dismissal is final.

Under settled law, Harbinger cannot possibly state a viable cause of action here.

**First**, Harbinger may not relitigate in this Court the same claims that were rejected as a matter of law by the Colorado Court in a judgment that is final and not subject to appeal.  Judge Martinez's caveat that Harbinger might lawfully assert some or all of its claims in an "appropriate forum" does not mean that claims that Judge Martinez ruled as a matter of law were meritless when filed in a Colorado federal district court—because they were impermissibly split from the Adversary Proceeding and unlawful collateral attacks on rulings of the Bankruptcy Court — nevertheless are permissible in this Court.  This action is barred by res judicata.

**Second**, this action should be dismissed for the same reasons that Judge Martinez rejected the Colorado Action, because Harbinger improperly split its claims and because the claims impermissibly attack the Special Committee Order.  Harbinger now alleges for the third time the exact same "illegal scheme . . . aimed at stripping Harbinger of its equity in [LightSquared] and its valuable contractual rights to control the company and to make critical decisions during LightSquared's Chapter 11 Cases." (Compl. ¶ 1.)  Harbinger's reliance on a limited number of additional facts here does not save its Complaint.  As in the Colorado Action,

Harbinger impermissibly asserts claims that it could have and should have advanced in the Adversary Proceeding, and which constitute a collateral attack on the Special Committee Order. That this Court might have had appellate jurisdiction over the Special Committee Order if Harbinger had attempted to appeal that order (which it never did), or that this Court might one day in the future hear an appeal from any final judgment ultimately entered in the Bankruptcy Court, does not authorize Harbinger's attempt to split its claims among two courts in separate plenary proceedings, or to collaterally attack in this Court the Bankruptcy Court's orders.

*Third*, Harbinger fails to plead a plausible RICO claim because, among other reasons:

- Harbinger pleads no RICO injury. The Bankruptcy Court has already ruled that Harbinger had no protectable legal interest in its "control rights" or equity in LightSquared beyond what it might be entitled to under applicable bankruptcy law and procedures. Harbinger thus had no right—contractual or otherwise—to retain control over or recover its equity in LightSquared following its bankruptcy.

- The Complaint falls well short of meeting the U.S. Supreme Court's requirement of a "direct relationship" between the alleged RICO predicate acts and injury. Harbinger nowhere alleges that it would have retained any rights it lost if not for Defendants' supposed racketeering, and any "loss" of "control rights" under the Stockholders' Agreement is attributable to intervening events wholly distinct from any alleged predicate acts, most notably the Bankruptcy Court's unopposed order divesting Harbinger of its stockholder "control rights."

- Harbinger fails to plead the requisite "pattern" of racketeering. To state a RICO claim, a plaintiff "must show that the predicate acts are related, and that they amount to, or pose a threat of, continuing . . . activity." *BWP Media USA Inc.* v. *Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360-61 (S.D.N.Y. 2014) (citation omitted). Here, many of the alleged predicate acts are unrelated to LightSquared (including DISH's pursuit of other acquisitions), and the alleged objective—to strip Harbinger's

control rights and acquire LightSquared's spectrum assets—is inherently closed-ended, eliminating the essential threat of continuing activity.

- Harbinger fails to allege with the particularity required under Fed. R. Civ. P. 9(b) that Defendants committed any predicate acts, and the alleged supposed wire and bankruptcy fraud or obstruction of justice theories are defective as a matter of law.

**Fourth**, Harbinger fails to plead a plausible RICO conspiracy claim for the additional reason that the Complaint lacks any non-conclusory allegations suggesting that Defendants conspired to engage in racketeering activity.

**Finally**, this Court should decline to exercise supplemental jurisdiction over Harbinger's remaining state law claims, which in any event are inadequately pled and fail to state a claim.

## ALLEGATIONS OF THE COMPLAINT

### A.    LightSquared Initiates the Bankruptcy Cases.

Harbinger is an investment fund owning in excess of 82% of the equity of LightSquared.  (Compl. ¶¶ 6, 28); *Harbinger Capital Partners LLC* v. *Ergen*, 504 B.R. 321, 330 (Bankr. S.D.N.Y. 2013) ("*LightSquared I*").[2]  Harbinger is controlled by Falcone, who directed Harbinger's approximately $2 billion investment in LightSquared.  *LightSquared LP* v. *SP Special Opportunities LLC*, 511 B.R. 253, 2666-67 (Bankr. S.D.N.Y. 2014) ("*LightSquared II*").

---

[2]    "It is well established that documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir* v. *Israel*, 2015 WL 4429757, at *3 n.4 (2d Cir. July 21, 2015) (citation omitted).  The Court "may properly take judicial notice of the record in . . . separate litigation between the same parties who are now before [it]." *Id.*  The Court may therefore consider on this motion the documents attached to the Declaration of Brian D. Glueckstein in Support of Defendants' Motion to Dismiss.

Falcone is Harbinger's largest investor and has approximately $500 million to $700 million—the majority of his net worth—personally invested in Harbinger.  *Id.* at 267.

Harbinger and LightSquared are parties to the Stockholders' Agreement, which provides Harbinger certain rights with respect to LightSquared, including voting rights, management rights, and the ability to appoint the majority of directors and chair committees. (Compl. ¶ 57.)

In 2010, the FCC authorized LightSquared to use a block of spectrum in the "L-Band" (the "L-Band Spectrum") to build a wireless broadband network, but conditioned this authorization on resolution of concerns that the downlink portion of the L-Band Spectrum interfered with spectrum used by GPS and other military and federal government technologies. (*Id.* ¶ 60.)   In February 2012, the FCC gave notice of its intent to suspend LightSquared's authorization.  (*Id.* ¶ 61.)  Since then, LightSquared has been unable to use its spectrum to build a wireless broadband network.

Without a license, on May 14, 2012, LightSquared filed for bankruptcy.  (*Id.* ¶ 62.)   LightSquared's inability to obtain FCC approval impeded LightSquared's ability to emerge from bankruptcy.  In fact, in January 2014 and again earlier this year, the FCC filed unsolicited statements in the Bankruptcy Proceedings advising that "it could give no assurances about what its decision would be or the timing of the decision" as to whether it would grant LightSquared's application to modify its spectrum license.  *In re LightSquared, Inc.*, 513 B.R. 56, 70 (Bankr. S.D.N.Y. 2014) ("*LightSquared III*"); *In re LightSquared, Inc.*, 534 B.R. 522, 528 (S.D.N.Y. 2014) ("*LightSquared IV*").   "[T]he regulatory hurdles that exist [related to the L-Band Spectrum] remain unresolved."  *LightSquared III* at 98.

### B.       SPSO Acquires LightSquared Debt.

Mr. Ergen is a founder and majority shareholder of DISH, a Nevada corporation based in Englewood, Colorado.  (Compl. ¶¶ 29-30; *LightSquared II* at 262.)  DISH is a public company traded on NASDAQ and, during the relevant period, had a 10-member Board of Directors, four of whom are independent under NASDAQ rules.  *Id.* at 265.  Mr. Ergen is the sole owner of SOH, which is the sole owner of SPSO, an investment vehicle.  (Compl. ¶ 32; *LightSquared II* at 262.)

Through a series of transactions between April 2012 and April 2013, SPSO purchased approximately $844 million par amount of LightSquared LP debt ("LP Debt") in cash using Mr. Ergen's personal funds, ultimately making SPSO LightSquared's largest creditor. (Compl. ¶ 83; *LightSquared II* at 260-61, 276-77.)  SPSO's debt purchases were executed by Sound Point, an investment management and advisory firm whose founder and sole managing partner is Stephen Ketchum.  (Compl. ¶ 34; *LightSquared II* at 266.)  Jason Kiser, a DISH employee, assisted with SPSO's purchases of LP Debt.  (Compl. ¶¶ 66, 83; *LightSquared II* at 261.)  Harbinger's entire RICO theory rests on its claim that SPSO's LP Debt purchases were at all times designed to facilitate the acquisition of the L-Band Spectrum by DISH (Compl. ¶ 93), which acquisition never happened.

### C.       Mr. Ergen and Later DISH Bid for LightSquared's L-Band Spectrum.

In May 2013, Mr. Ergen informed the DISH Board of Directors that he was considering an offer to acquire LightSquared's spectrum assets, which would become available through the Bankruptcy Proceedings, and he invited the DISH board to consider the opportunity to bid with or in place of him personally.  (Compl. ¶ 114; *LightSquared II* at 287.)  DISH formed a special transaction committee of the Board to evaluate that opportunity.  (Compl. ¶ 118; *LightSquared II* at 288.)

On May 15, 2013, Mr. Ergen, through LBAC, offered to purchase LightSquared's L-Band Spectrum and other assets for $2 billion in cash and the assumption of certain liabilities. (Compl. ¶¶ 13, 105; *LightSquared II* at 288-89.)  On July 21, 2013, the DISH Board, acting on the recommendation of the DISH special committee and its advisors, approved an offer by DISH of approximately $2.2 billion for substantially all of the assets of LightSquared LP subject to various conditions and the negotiation of a definitive acquisition agreement.  (Compl. ¶¶ 14, 105; *LightSquared II* at 292-93.)

On July 23, 2013, LBAC (now owned by DISH) and certain LightSquared secured lenders entered into a Plan Support Agreement in support of a proposed bankruptcy reorganization plan in the Bankruptcy Proceedings.  (Compl. ¶ 121; *LightSquared II* at 293.) Pursuant to that agreement, LBAC agreed, subject to various conditions and the negotiation of an acceptable purchase agreement with LightSquared, to purchase substantially all of the assets of LightSquared LP for $2.2 billion (plus the assumption of certain liabilities) as the opening, or "stalking horse" bid in the Bankruptcy Proceedings.  (Compl. ¶¶ 105, 121; *LightSquared II* at 293.)  This offer was subject to higher bids, as well as approval by the Bankruptcy Court as one of many proposed plans in the highly contested Bankruptcy Cases.

One of the conditions to LBAC's bid was that the sale had to be completed, and the accompanying bankruptcy plan had to be confirmed, by December 6, 2013, which date was subsequently extended to January 7, 2014.  DISH had made clear throughout the bankruptcy process that, without a timely sale process and the completion of the asset acquisition on the timetable specified in the LBAC bid, DISH may pursue alternative spectrum investments, including in a government-sponsored auction of newly available, clean and immediately usable wireless spectrum, which auction was scheduled for February 2014.  *LightSquared II* at 312.  On

October 1, 2013, the Bankruptcy Court entered an order approving DISH's $2.2 billion "stalking horse" bid for an auction of LightSquared's spectrum assets that was scheduled for December 2013.[3]  (Compl. ¶ 156.)

>   **D.      The Bankruptcy Court Orders the Appointment
>   of the LightSquared Special Committee.**

Despite having received a $2 billion bid in May 2013 and a $2.2 billion bid in July 2013 for LightSquared's L-Band Spectrum, neither LightSquared nor its Board of Directors (controlled by Harbinger) meaningfully engaged with LBAC.   LBAC's counsel brought LightSquared's inaction to the Bankruptcy Court's attention.   (Compl. ¶ 135.)   With LightSquared having failed to engage with LBAC regarding a transaction, and otherwise making no progress towards a realistic plan to exit bankruptcy, the Bankruptcy Court commenced a series of hearings on this issue in September 2013.   Those hearings included addressing the inherent conflict between Falcone's fiduciary obligations as a member of the LightSquared Board of Directors and Harbinger's interest in creating value for the current equity holders.  (*Id.* ¶¶ 144-45.)  Concerns as to Harbinger's role in the plan process were raised by LightSquared's secured creditors[4] and by LBAC.

---

[3]      *Order (A) Establishing Bid Procedures, (B) Scheduling Date and Time for Auction, (C) Approving Assumptions and Assignment Procedures, (D) Approving Form of Notice, and (E) Granting Related Relief* [Bank. Dkt. No. 892] (the "Bid Procedures Order"), attached as Exhibit B to Glueckstein Declaration.

[4]      *See, e.g., Declaration of Steven Zelin in Support of the Motion of the Independent Ad Hoc Secured Group of LightSquared LP Lenders* [Bankr. Dkt. No. 810] ¶ 19 ("I have significant concern as to the LP Debtors' ability to run a fair and competitive Auction . . . .  Harbinger[] is acutely focused on preventing the Auction from occurring and retaining its control over the LP Assets[.]").

In September 2013, a group of LightSquared's secured creditors (the "Ad Hoc Group") moved to have the Bankruptcy Court appoint an independent committee to oversee LightSquared's efforts to sell its assets.  In the motion, the Ad Hoc Group pointed to Harbinger's repeated admission that it was interested in maintaining its ownership of LightSquared rather than selling the assets, and argued that because Harbinger "controls the board of directors of LightSquared Inc.," and nearly all of its stock, there was an "obvious and crippling conflict [that] can only chill bidding and cannot facilitate a fair and robust sales process necessary to maximize value to the Debtors' estates."[5]

The Bankruptcy Court agreed with the Ad Hoc Group and determined that a special committee was necessary to oversee LightSquared's efforts to sell its assets so "we can have someone exercising business judgment unconnected or influenced by the equity in this case." (Compl. ¶ 145.)  Thus, under the Bankruptcy Court's direction, LightSquared appointed three new members to the Board of Directors to serve on the LightSquared Special Committee. (*Id.* ¶ 146.)  On October 1, 2013, the Bankruptcy Court ordered that all actions and decisions on behalf of LightSquared relating to the auction and the plan of reorganization process be made by the LightSquared Special Committee.  (*Id.* ¶¶ 146-47; *LightSquared III* at 67 n.18.)  This Special Committee Order is the foundation for all of Harbinger's claims.

---

[5]     *Motion of the Independent Ad Hoc Secured Group of LightSquared LP Lenders* [Bankr. Dkt. No. 809-1] at 34); *cf. Credit Lyonnais Bank Nederland, N.V.* v. *Pathe Commc'ns Corp*., 1991 WL 277613, at *34 n.55 (Del. Ch. Dec. 30, 1991) (describing the "curious" incentives and divergence of interests creditors and directors face during insolvency, and observing that optimal "result[s] will not be reached by a director who thinks he owes duties directly to shareholders only").

E.   **LightSquared Special Committee's Decisions and the LBAC Bid Termination.**

Once appointed, the LightSquared Special Committee did not engage meaningfully with LBAC and, with no other bidders having emerged, decided to cancel the auction in order to pursue a supposed expression of interest from a third party, which quickly vaporized.  (Compl. ¶ 157; *LightSquared III* at 73 n.27.)

Harbinger, and LightSquared itself, vigorously opposed the bankruptcy plan premised on the LBAC bid.  LightSquared refused to cooperate in its execution or to negotiate the draft LBAC purchase agreement.  Instead, LightSquared and Harbinger each proposed their own competing plans of reorganization that sought to reorganize without selling LightSquared's L-Band Spectrum.

In mid-December, DISH engineers discovered that there were new, potentially significant technical issues concerning the uplink portion of the L-Band Spectrum, in addition to the downlink GPS interference issues that had long plagued LightSquared's spectrum.  (Compl. ¶ 157; *LightSquared III* at 67 n.19.)  DISH sought, but was unable to successfully negotiate, a risk-sharing arrangement with LightSquared's creditors such that the creditors and DISH would share the financial risks associated with the new technical issues in the event that they were not satisfactorily resolved.  (Compl. ¶ 157.)  As a result of that failed negotiation, and mindful of the upcoming government-sponsored spectrum auction, on January 7, 2014, LBAC gave notice that it was terminating the $2.2 billion bid for LightSquared's spectrum assets.  (*Id.* ¶¶ 158, 209; *LightSquared III* at 73 n.27.)  On January 22, 2014, the Bankruptcy Court ruled that LBAC had lawfully terminated its $2.2 billion bid.  *Id.*

F.      **The Adversary Proceeding.**

On August 6, 2013, Harbinger commenced the Adversary Proceeding in the Bankruptcy Court against the same Defendants here, among others.  (Compl. ¶ 39.)  Harbinger alleged that DISH, acting through Mr. Ergen and other affiliates, improperly acquired significant amounts of LightSquared's LP Debt in violation of restrictions contained in LightSquared's Credit Agreement, and asserted claims, *inter alia*, for fraud, civil conspiracy and tortious interference based on the alleged conduct.  *LightSquared I* at 327-29.  The central theory of Harbinger's claims was that "it had a protectable commercial advantage in exercising its control rights over the Debtors."  *Id.* at 354.  LightSquared later intervened as a plaintiff in the Adversary Proceeding.  *Id.* at 329.  On October 29, 2013, the Bankruptcy Court dismissed Harbinger's complaint and provided LightSquared leave to file a further amended complaint.  *Id.* at 358.

Rejecting the thesis of the Complaint here, the Bankruptcy Court held that Harbinger's "control rights" were **not** a "protectable interest that it can assert as a basis to bring these causes of action based in tort."  *Id.* at 354.  Likewise, the Bankruptcy Court ruled that all of Harbinger's bankruptcy-related conduct—contending that Defendants sought to "usurp control over the Bankruptcy Cases or force the sale of certain assets belonging to the Debtors—is an impermissible attempt to turn a party's participation in the chapter 11 process (which is governed by Code provisions dealing with the termination of exclusivity and other related concepts) into a tort."  *Id.* at 355.

Contrary to Harbinger's assertion (Compl. ¶ 41), the Bankruptcy Court dismissed Harbinger's tort claims for failure to state a claim under Rule 12(b)(6).  *LightSquared I* at 344, 355, 356.  The Bankruptcy Court did not dismiss Harbinger's claims on standing or subject matter jurisdiction grounds, but merely observed that the other contractual and commercial rights

Harbinger claimed were breached or interfered with belonged to LightSquared, if anyone. *Id.* Moreover, the Supreme Court has held expressly that questions about whether a plaintiff may properly allege a cause of action is a debate about the merits of the claim, and raises absolutely no issue of subject matter jurisdiction. *Lexmark Intern., Inc.* v. *Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) ("the question . . . whether Static Control falls within the class of plaintiffs whom Congress has authorized to sue" raises no issue of jurisdiction).

On November 15, 2013, LightSquared commenced its own claims against SPSO, Mr. Ergen and DISH, among others, based on SPSO's LP Debt purchases, but did not assert claims against Sound Point or Mr. Ketchum. *LightSquared II* at 263. Harbinger also re-asserted claims seeking to invalidate SPSO's creditor claim in the Bankruptcy Proceedings or, alternatively, to subordinate Mr. Ergen's payment priority on that claim. *Id.* at 263-64. The Bankruptcy Court ultimately permitted most of LightSquared's claims, along with Harbinger's claim seeking to disallow SPSO's bankruptcy claim, to proceed to trial. *Id.* at 264.

On June 10, 2014, following trial, the Bankruptcy Court issued a decision rejecting, in their entirety, all claims against DISH. *LightSquared II* at 317 n.48. The Bankruptcy Court concluded that SPSO's LP Debt purchases complied with the express terms of the Credit Agreement. *Id.* at 315-17. The Bankruptcy Court also concluded that SPSO's LP Debt claims against LightSquared were enforceable, *id.* at 339-41, but that SPSO's LP Debt claims should be subordinated in an amount to be determined at a future trial. *Id.* at 345-46, 361. The basic premise of the subordination finding was the Bankruptcy Court's conclusion that Mr. Ergen was acting, at least as late as April 2013, for the benefit of DISH when purchasing LP Debt and, because DISH was not an eligible purchaser of the LP Debt, those actions breached the implied covenant of good faith and fair dealing in the LP Debt agreement. *See id.* at 346.

- 14 -

G.     **Harbinger Seeks to Present the Same Claims to**
       **This Court on Appeal from the Bankruptcy Court.**

Harbinger has twice sought leave to appeal the Adversary Proceeding rulings to this Court. By asking this Court—sitting in its role as an intermediate appellate court—to review on appeal rulings from the Bankruptcy Court on the issues that Harbinger now re-pleads in its Complaint here, Harbinger unavoidably concedes that this action is a flatly impermissible collateral attack on the Bankruptcy Court's rulings. At the same time, Harbinger acknowledged in its appellate filings in this Court that the factual and legal theories it pressed in the Bankruptcy Court were addressed—and rejected—on their merits, making clear that this action is barred by *res judicata*.

On January 6, 2014, Harbinger filed in this Court a notice of appeal from the Bankruptcy Court's grant of the motion to dismiss its Adversary Proceeding complaint. *In Re: LightSquared Inc.*, 1:14-cv-00062-RA (filed Jan. 6, 2014). In that interlocutory appeal, Harbinger contended, among other things, that the Bankruptcy Court's decision (i) wrongly held that Harbinger could not "prove reliance on a fraudulent misrepresentation" by Defendants, (ii) improperly refused to "allow[] a controlling shareholder and intended victim of fraud to seek redress in its own right for such wrongdoing," and (iii) "ignored governing law that recognizes Harbinger has a protectable interest—the infringement of which gives rise to liability in tort— stemming from: (a) Harbinger's actual negotiations with the Ad Hoc Secured Group and with Jefferies; (b) *Harbinger's pecuniary interest in LightSquared*; and (c) Harbinger's expenditure of time, labor, skills in negotiating for a full-pay plan and to secure exit financing." (Memorandum of Law In Support of Motion for Leave to Appeal, *In Re: LightSquared Inc.*, 1:14-cv-00062-RA [Dkt. No. 7], at 23 (emphasis added).) On June 30, 2014, in light of the Bankruptcy Court's trial

ruling in the Adversary Proceeding, Judge Abrams dismissed Harbinger's leave to appeal from the Bankruptcy Court's interlocutory dismissal order.

On July 30, 2014, Harbinger again sought to appeal from the rulings in the Adversary Proceeding, including the dismissal decisions and the post-trial decision. *Harbinger Capital Partners LLC* v. *Ergen*, 1:14-mc-00234-AT (S.D.N.Y.) [Dkt. No. 1]. With the support of Harbinger, this Court held the motion in abeyance pending the outcome of a hearing on the confirmation of LightSquared's second amended join plan of reorganization, which if consummated will moot the need for any further proceedings with respect to equitable subordination. In March 2015, the Bankruptcy Court confirmed the Plan, after which Harbinger argued before this Court that the confirmation order rendered its Adversary Proceeding appeal "no longer interlocutory" and therefore "appealable as of right." (*See* 7/7/15 Order, Case No. 14-MC-00234 [Dkt. No. 13].) Your Honor rejected that argument and denied Harbinger's motion seeking leave to appeal. (*Id.*) As a result, no final order has been entered in the Adversary Proceeding, which remains before the Bankruptcy Court.

**H.    The Bankruptcy Court's Prior Rejection of the "Falcone" Plan.**

In February 2014, LightSquared filed an amended reorganization plan—conceived and negotiated by Harbinger—the centerpiece of which was its claim asserted in the Adversary Proceeding that SPSO's approximately $1 billion claim as a creditor of LightSquared should be rejected entirely, or severely reduced. *See LightSquared III* at 61-62. LightSquared proposed, among other things, to pay all other secured debt holders in full in cash, but to pay SPSO nothing and instead convert its first lien secured LP Debt into third lien unsecured debt in a reorganized post-bankruptcy entity. *Id.* at 99. SPSO objected to the LightSquared plan. *Id.* at 67. Under the plan, Harbinger would have retained no more than 45 percent of the equity in

- 16 -

LightSquared.  *Id.* at 76 & n.32.   In other words, Harbinger's own plan to reorganize LightSquared would have stripped Harbinger of the equity and "control rights" at issue here.

On July 11, 2014, the Bankruptcy Court denied confirmation of that proposed plan of reorganization.  *See LightSquared III* at 101-04.  The Bankruptcy Court criticized the "Harbinger-driven plan process" and determined that Falcone—not the LightSquared Special Committee—"orchestrated" and "more or less dictated the principal economic terms and structure of the Plan."  *Id.* at 76, 103-04.  Moreover, the Bankruptcy Court held that Harbinger's proposal was a "gerrymandered end-run around their inability to disallow the SPSO Claim."  *Id.* at 103.

## I.  Harbinger Files the Colorado Action.

After failing in its attempt to improperly retain LightSquared equity at SPSO's expense, Harbinger reloaded its litigation quiver.  On July 8, 2014, Harbinger filed the Colorado Action, which was identical in all relevant aspects to this Action.  As here, Harbinger asserted RICO claims, claims under the Colorado Organized Crime Control Act, Colo. Rev. Stat. §§ 18-17-101 *et seq.* ("COCCA"), and claims of tortious interference with contract and abuse of process.  The alleged basis for Harbinger's claims, as here, was that Defendants participated in an alleged "Fraudulent Scheme" to "strip Harbinger of its control rights pursuant to the Stockholders' Agreement" in order "[t]o complete [their] goal of wresting away the valuable wireless spectrum assets held by LightSquared while in bankruptcy."  (Colo. Compl. ¶ 9, Table 1.)  According to Harbinger, this scheme was "perpetrated" by Mr. Ergen himself, "with the substantial assistance of DISH's Treasurer and Vice President of DISH and EchoStar, [Jason] Kiser, his long-time banker, Ketchum, and Ketchum's firm, Sound Point."  (*Id.* ¶ 62.)  Harbinger claimed as damages the lost value of its failed LightSquared investment.

As here, Harbinger alleged sundry supposed acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  (*Id.* ¶ 161, Table 1.)  These claims, repeated wholesale in this action, were themselves borrowed from the same facts and allegations raised in the Adversary Proceeding and included such innocuous and unrelated actions as "monitor[ing] news stories" and "consult[ing]" with counsel as well as conduct relating to DISH's acquisition of DBSD in 2009 and DISH's unsuccessful pursuit of Clearwire in 2012 and 2013.  (*Id.*)  Harbinger also alleged that actions taken by Defendants during the Bankruptcy Proceedings (virtually all of which occurred after Harbinger lost "control" over LightSquared through the Special Committee Order) constituted bankruptcy fraud and obstruction of justice.  (*Id.* ¶ 162-63.)

### J.     The Dismissal of the Colorado Action.

In an April 28, 2015 published opinion, Judge Martinez granted Defendants' motion to dismiss the Colorado Action as a matter of law, ruling against Harbinger on the same legal defects that permeate Harbinger's Complaint in this action.

*First*, Judge Martinez held that the lawsuit violated the rule against claim splitting, which requires "a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit."  *Harbinger Colo.*, 2015 WL 2128901, at *6 (quoting *Katz* v. *Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)).  Judge Martinez compared the allegations and claims in the Colorado Action and Adversary Proceeding, and concluded that "all of the material allegations from the Adversary Proceeding (and many of the subsidiary allegations) are a part of this proceeding as well."  *Id.* at *9.  Judge Martinez rejected Harbinger's argument that the Adversary Proceeding had no preclusive effect on "non-core" RICO claims, holding that because Harbinger could have brought its same non-core claims before the Bankruptcy Court but did not, Harbinger was precluded from bringing them in a subsequent suit.  *Id.* at *7.  Judge Martinez further rejected Harbinger's contention that it lacked standing to bring its claims before the

Bankruptcy Court. *Id.* at *8. Finding that all of Harbinger's claims "could have been brought in the Adversary Proceeding Complaint," Judge Martinez concluded that all causes of action were "prohibited by the rule against claim-splitting, and will be dismissed on that basis." *Id.* at *11.

*Second*, Judge Martinez also held that the Colorado Action was an impermissible collateral attack on the Special Committee Order. Judge Martinez recognized that "[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a prior judgment." *Id*. (quoting *Miller* v. *Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)). Judge Martinez explained that "the immediate cause of the harm of which Harbinger complains is the Special Committee Order—*that* is the reason Harbinger lost its control rights," and "[t]o succeed in this lawsuit on any theory, Harbinger would need to prove that the Special Committee order was improperly obtained." *Id.* at *11.

*Third*, Judge Martinez rejected substantial other aspects of Harbinger's claims, and flatly rejected the theories offered by Harbinger here to distinguish this action from its defeats in the Colorado Action or the Adversary Proceeding. Among other things, Judge Martinez concluded that (a) the same "eight-page table" repeated in the Complaint in this action enumerating "Defendants' allegedly false representations" "nowhere alleges exactly where or when" any actual false statement took place, *id.* at *10; (b) Harbinger failed to allege any coherent claim that Defendants made any false statement about the "fairness" of DISH's bid for LightSquared assets, *id.*; (c) Harbinger's assertion—that adding allegations about other DISH spectrum bids "ma[de] its current complaint different from the Adversary Proceeding Complaint"—has "no good faith basis" and is "frivolous," *id.* at *9; and (d) Harbinger raised in *both* the Adversary Proceeding and in the Colorado Action the same lost equity allegation that it

contends distinguishes this action from its prior complaints—*i.e.*, that "Harbinger will lose its unique controlling interest in the [d]ebtors and suffer billions of dollars in damages.'" *Id.* at *4 (quoting *LightSquared I* at 345).[6]

**K.     Harbinger Declines to Appeal and Files the Instant Action.**

On May 27, 2015, Harbinger filed a notice of appeal of the Colorado Court's judgment.  But on July 21, 2015—the day that its appellate brief was due in the Tenth Circuit— Harbinger voluntarily dismissed its appeal with prejudice, and filed the instant Complaint.

The Complaint here is identical in all relevant respects to the Colorado action. The Complaint alleges the same RICO, COCCA, tortious interference with contract, and abuse of process claims against the same Defendants, seeking the same damages "based on losing specific rights [Harbinger] once had under the Stockholders' Agreement and the loss of all of its equity interests."  (Compl. ¶ 49.)  Furthermore, the Complaint alleges identical facts and asserts identical legal theories.  The Complaint is largely copied from the Colorado Complaint verbatim, and Harbinger acknowledges that it has simply re-filed its Colorado Action pursuant to the April 28, 2015 order, which Harbinger states was "without prejudice to Harbinger re-filing its claims in an appropriate forum."  (Compl. ¶ 52.)

---

[6]     *See also Harbinger Colo.*, 2015 WL 2128901, at *9 (Defendants' conduct was alleged to be "'aimed at misappropriating Harbinger's control over and investment in LightSquared'" (quoting Adversary Proceeding Compl. ¶ 1)); *10 n.5 (claim that Harbinger suffered other injuries from its loss of control "changes nothing.  Given the Special Committee Order, Harbinger had no control anyway."); *3 (Harbinger alleged it "lost the ability to participate in all material decisions related to LightSquared necessary to protect its investment'" (quoting Colo. Compl. ¶ 129)).

**L.      Harbinger Seeks the Same Damages in a Flurry of Other Litigation.**

Along with the Colorado Action, Harbinger has filed multiple other lawsuits seeking to recover its LightSquared investment, in each case seeking damages for the same harm—a loss of its LightSquared equity value—and blaming everyone but itself and its patriarch, Mr. Falcone.  In August 2013, Harbinger sued the entire GPS industry in this Court, alleging damages of at least $1.9 billion and contending that those defendants were responsible for the failure of Harbinger's LightSquared investment.  *Harbinger Capital Partners LLC* v. *Deere & Co.*, 13-cv-05543-RMB (S.D.N.Y.).  That complaint was dismissed and Harbinger has appealed Judge Berman's dismissal of its claims to the Second Circuit.

On July 11, 2014, Harbinger commenced litigation against the United States in the U.S. Court of Federal Claims seeking the same $1.9 billion in damages, asserting that the FCC was responsible for Harbinger's failed LightSquared investment based on the FCC's refusal to permit LightSquared to build a nationwide wireless network.  *Harbinger Capital Partners, LLC, et al.* v. *United States of America*, 14-cv-00597-MCW (Ct. Cl.).  This action remains pending.

**M.      The Bankruptcy Proceedings Are Ongoing.**

The Bankruptcy Proceedings are now in their post-confirmation phase.  On March 27, 2015, the Bankruptcy Court entered an order confirming a Modified Second Amended Joint Plan pursuant to Chapter 11 of the Bankruptcy Code (the "Second Amended Joint Plan"), which Harbinger admits to having "participated in negotiating."  (Compl. ¶¶ 1 n.1, 18.)  Harbinger also admits that, "under the Second Amended Joint Plan," it "mitigated its damage" by "recover[ing] preferred and common equity on account of its debt and litigation claims."  (*Id.* ¶¶ 4, 49.)  Specifically, Harbinger will receive "among other value, 44.45% of the common equity" of the reorganized LightSquared.  (*Id.* ¶ 55.)  The confirmation order, which this Court affirmed on

appeal, is premised in part on the conclusion that LightSquared's equity had no independent value.  *LightSquared IV* at 531-32.

The Second Amended Joint Plan is not yet effective.  Upon the effective date of the Second Amended Joint Plan, all of Harbinger's claims in this action will be assigned to the reorganized LightSquared.  (Compl. ¶ 24.)

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, 'state a claim to relief that is plausible on its face.'"  *Planetarium Travel, Inc.* v. *Altour Intern., Inc.*, __ F. Supp. 3d __, 2015 WL 1209524, at *2 (S.D.N.Y. Mar. 16, 2015) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.    THIS ACTION IS BARRED IN ITS ENTIRETY BY *RES JUDICATA*.

This dispute has already been litigated and decided conclusively on its merits by the Colorado Court.  "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  *Taylor* v. *Sturgell*, 553 U.S. 880, 891-92 (2008).  By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two prongs of *res judicata* protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Montana* v. *United States*, 440 U.S. 147, 153-154 (1979).  *Res judicata* is an unbending and non-discretionary rule of law.  There is "no principle of law or equity which sanctions the rejection by a federal court of

the salutary principle of *res judicata*." *Heiser* v. *Woodruff*, 327 U.S. 726, 733 (1946).  A dismissal on the pleadings is a final judgment on the merits, and "[a] final judgment on the merits of an action precludes the parties or their privies from relitigation issues that were or could have been raised in that action." *Federated Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981).

This Court may not and should not revisit the matters decided in the Colorado Action.  As the Supreme Court has held, "the consequences of a final, unappealed judgment on the merits" are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Id.*  Every matter at issue in this case was or could have been raised in the Colorado Action, and this action is barred by *res judicata*.

**A.     This Action is Barred by Claim Preclusion.**

Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire* v. *Maine*, 532 U.S. 742, 748 (2001).  "[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010).  Claim preclusion applies where, as here, "1) the previous action involved an adjudication on the merits; 2) the previous action involved the plaintiffs or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan* v. *N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

There is no dispute that Harbinger alleges claims under the same statutory and common law theories, against the same defendants, based upon the same events it challenged in the Colorado Action.  Harbinger's attempt to embellish its RICO claims with additional facts or

events does not avoid the preclusive effect of the Colorado judgment; this action, like the Colorado Action, focuses only on Harbinger's loss of "control rights" incident to its equity ownership.  *Maharaj*, 128 F.3d at 97 (the "bar extends to same 'transaction, or series of connected transactions'").  Claim preclusion applies because "the facts essential to the second were [already] present in the first."  *Computer Assocs. Int'l, In*c. v. *Altai, Inc*., 126 F.3d 365, 369 (2d Cir. 1997).  As stated by the Second Circuit:  "In this case the same parties, the same cause of action and the same facts form the basis of the second complaint.  It was therefore barred by *res judicata* principles."  *Teltronics Serv., Inc.* v. *LM Ericsson Tele., Inc.*, 642 F.2d 31, 35 (2d Cir. 1981).

    The dismissal of the Colorado Action "without prejudice to Harbinger re-filing its claims in an appropriate forum" does not deprive that final judgment of preclusive effect.  "As the sufficiency of a complaint to state a claim on which relief may be granted is a question of law, the dismissal for failure to state a claim is a final judgment on the merits and thus has *res judicata* effects."  *Berrios* v. *N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009); *see Teltronics*, 642 F.2d at 34.  Although invocation of the phrase "without prejudice" usually means that claim preclusion does not apply, *Elfenbein* v. *Gulf & W. Indus., Inc*., 590 F.2d 445, 449 (2d Cir. 1978), a court may not "blindly or talismanically label[] a dismissal as one with or without prejudice, requiring instead a rigorous and thorough examination of the grounds for dismissal." *Weston Funding Corp.* v. *Lafayette Towers, Inc.*, 410 F. Supp. 980, 984 (S.D.N.Y. 1976), *aff'd*, 550 F.2d 710 (2d Cir. 1977).

    The relevant question for claim preclusion purposes is whether the Colorado Court dismissed Harbinger's claims "upon the merits."  *Semtek Intern. Inc*. v. *Lockheed Martin Corp*., 531 U.S. 497, 503 (2001).  By any measure, the Colorado Court did so, and that judgment

precludes Harbinger's suit here.  *Diaz* v. *Judge Advocate Gen. of the Navy*¸ 413 F. App'x 342, 344 (2d Cir. 2011) ("because those claims were previously dismissed on the merits (*i.e.*, on the ground of issue preclusion), the district court was correct in concluding that these claims were barred as *res judicata*").  Indeed, the Colorado Court made clear that "without prejudice" meant that Harbinger's claims could only proceed before the Bankruptcy Court (and appeals taken properly therefrom).  *See Harbinger Colo.*, 2015 WL 2128901, at *10 ("If Harbinger has a claim based on [supposedly concealed valuations of LightSquared], Harbinger must bring that claim **before the Bankruptcy Court.**") (emphasis added).

> **B.      Harbinger Is Bound by the Colorado Court's Claim-Splitting and Collateral Attack Rulings Under the Doctrine of Issue Preclusion.**

Whether or not the Colorado Action qualifies for claim preclusion, this action is barred by issue preclusion because Harbinger may not relitigate in this Court the same claim-splitting and collateral attack rulings that it litigated and lost in Colorado.  "[A]lthough the dismissal of the first suit was labeled 'without prejudice,' it is 'with prejudice' with respect to the issues that were decided in the first suit."  *Cooper* v. *Principi*, 71 F. App'x 73, 75 (1st Cir. 2003). No matter what label is used to describe the Colorado dismissal, the judgment of dismissal in that action precludes Harbinger from "seek[ing] recovery based on the same legal issue that was previously decided when the [prior] . . . action was resolved."  *Duane Reade*, 600 F.3d at 200 (prior dismissal without prejudice was conclusive as to issues actually decided).  "'[U]nder principles of issue preclusion, even a case dismissed without prejudice has preclusive effect on the [particular] issue litigated.'"  *Copeland* v. *Fortis*, 2010 WL 2102454, at *2 n.1 (S.D.N.Y. May 20, 2010) (quoting *Kasap* v. *Floger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999)); *McNally* v. *Colo. State Patrol*, 122 F. App'x 899, 902-03 (10th Cir. 2004)

("issue preclusion bars relitigation of matters actually litigated and adjudged, even if there is no final judgment on the merits").

Issue preclusion applies where, as here, "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Proctor* v. *LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (citation omitted).  The "fundamental notion" of the doctrine "is that an issue of law or fact actually litigated in a prior action may not be relitigated by the same parties or their privies."  *Ali* v. *Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citation omitted).  Plainly, the Colorado Court's holding that Harbinger's claims fail as a matter of law under claim-splitting and collateral attack doctrines applies here, and requires dismissal of this action.

***The identical issues were raised in the Colorado Action.***  In Colorado, as here, Defendants sought dismissal on the grounds that Harbinger sought impermissibly to raise claims that should have been raised in the Adversary Proceeding, *Harbinger Colo.*, 2015 WL 2128901, at *9, and, that Harbinger's action was an impermissible collateral attack on the Special Committee Order, *id.* at *11.  Harbinger's claim that its "Complaint differs in certain respects from the one in the Colorado Action" (Compl. ¶ 24) is irrelevant.  The Colorado Court's conclusion that Harbinger's complaint impermissibly split its claims and unlawfully attacks rulings of the Bankruptcy Court is not affected by Harbinger's trivial alterations of its factual allegations.  *Duane Reade*, 600 F.3d at 200 (dismissal of declaratory judgment claim on contract barred later breach of contract damages claim on same provision); *Cooper*, 71 F. App'x at 75 (prior ruling that claim was pre-empted bars similar claim in subsequent suit alleging different facts).

**The same issues were actually litigated and decided in the Colorado Action.**
Defendants moved to dismiss the Colorado Action on several grounds, including claim-splitting
and collateral attack, and Harbinger opposed.   The Colorado Court dismissed the case in a
forcefully worded opinion.  *Harbinger Colo.*, 2015 WL 2128901, at *12.

**Harbinger had a full and fair opportunity to litigate the same issues in
Colorado.**  Harbinger filed a 45-page opposition to Defendants' motion to dismiss the Colorado
Action, in which it set out its positions on the claim-splitting and collateral attack issues.  (*See
Harbinger*, No. 1:14-cv-01907 (D. Colo.) [Dkt. 52].)   The Colorado Court considered and
rejected those arguments.  Harbinger sought to appeal from that final decision, but thereafter
dismissed its appeal.  Harbinger cannot meet its "burden of showing that the prior action did not
afford a full and fair opportunity to litigate the issues." *Proctor*, 715 F.3d at 414.

**The Colorado Court's holdings on the claim-splitting and collateral attack
issues were necessary to support the Colorado judgment.**   The Colorado Court found in favor of
Defendants and against Harbinger on both the claim-splitting issue and the collateral attack issue.
The Second Circuit has ruled expressly that such a ruling renders both grounds sufficiently
"necessary" for issue preclusion to apply.  *See Winters* v. *Lavine*, 574 F.2d 46, 66-67 (2d Cir.
1978) ("[A]n alternative ground upon which a decision is based should be regarded as
'necessary' for purposes of determining whether the plaintiff is precluded by the principles of *res
judicata* or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative
grounds."); *see also Oneida Tribe of Indians of Wis.* v. *AGB Props., Inc.*, 2002 WL 31005165, at
*7 (N.D.N.Y. Sept. 5, 2002) ("It is well established in the Second Circuit that for purposes of
collateral estoppel an issue need not be the only determinative factor in a decision in order for it
to be considered 'necessary' to that decision.").

- 27 -

***The Colorado Court's judgment was a valid and final judgment on the merits.*** Harbinger conceded that the Colorado Court's judgment was final by appealing from that judgment to the Tenth Circuit. It may not now dispute the finality of the Colorado Court dismissal. *See Kirschner* v. *Agoglia*, 476 B.R. 75, 79 (S.D.N.Y. 2012) ("If there is no appeal, the grant of the motion to dismiss for failure to state a claim is a final judgment dismissing the claim and is given res judicata and collateral estoppel effect."). Indeed, Harbinger's docketing statement in the Tenth Circuit said that its (later dismissed) appeal was "from the May 27, 2015 final judgment of dismissal . . . granting the motion to dismiss of Defendants-Appellees." (Docketing Statement, *Harbinger*, No. 15-1183 (10th Cir. June 10, 2014).)

### C.   Harbinger Cannot Avoid the Preclusive Effect of the Colorado Court's Decision by Re-Filing Its Claims in This Court.

Grasping upon Judge Martinez's description of his dismissal order as being "without prejudice to refiling in an appropriate forum," Harbinger contends disingenuously that this Court is the "appropriate forum" that Judge Martinez had in mind. (Compl. ¶ 24.) This is not so.

*First*, Harbinger asserts that this action was properly filed in this Court, even after the same claims were dismissed by a coordinate federal district court, because the Bankruptcy Court lacks jurisdiction over this case. (Compl. ¶ 54.) Harbinger made the same claim to the Colorado Court, and the Colorado Court devoted five paragraphs of its decision to "***reject[]*** ***Harbinger's argument that the Bankruptcy Court lacked jurisdiction*** to hear the claims Harbinger now asserts." *Harbinger Colo.*, 2015 WL 2128901, at *7-8. As with the remainder of the Colorado Court's decision, Harbinger is bound by this ruling, which it declined to appeal.

*Second*, the Colorado Court ruled unambiguously as a matter of law that Harbinger could not pursue its claims in ***any*** court without ***first*** undoing its defeats in the

Bankruptcy Court, whether in that court or through appeals from any judgment in the Bankruptcy Court.  As in Colorado, the claims here were impermissibly split from Harbinger's now dismissed Adversary Proceeding complaint, because "[i]n all events, . . . the claims asserted here are claims that could have been brought *in the Adversary Proceeding Complaint*" before the Bankruptcy Court.  *Harbinger Colo.*, 2015 WL 2128901, at *11 (emphasis added).  Judge Martinez did not remotely suggest that Harbinger could re-file the same claims in another federal district court, he simply noted that a number of the acts Harbinger cites as predicates for its RICO claims could be addressed, if at all, *only* in the Bankruptcy Court or an appeal from that court.  *Id.* at *10 ("if Defendants in fact procured the Special Committee Order through fraudulent misrepresentations to the Bankruptcy Court, Harbinger *must raise that with the Bankruptcy Court*") (citing Fed. R. Civ. P. 60(b)(3)).[7] And, unless and until the Bankruptcy Court's order divesting Harbinger of its supposed "control rights" is rescinded by the Bankruptcy Court or reversed on appeal from some final judgment, that order or consequences that flow from it may not be the premise of an original civil action in this or any other court.[8] *Id.* at 11.  Far from endorsing Harbinger's repetitive piecemeal approach, the Colorado Decision requires dismissal of this action.

---

[7]     *See also id.* at *10 n.5 (Harbinger's claim challenging "a number of other post-Special Committee Orders that supposedly caused 'new injuries' . . . *is for the Bankruptcy Court* to deal with") ; *id.* at *10 ("If Harbinger has a claim [based on evidence presented to Bankruptcy Court] . . . Harbinger must bring that claim *before the Bankruptcy Court.*") (emphases added).

[8]     Indeed, any undoing of the Bankruptcy Court's orders, whether through reconsideration by that Court or by appeal to this Court, would alone be insufficient to relieve Harbinger of the preclusive effects of the underlying legal rulings by the Bankruptcy Court.  A reversal of the Bankruptcy Court's decisions might relieve Harbinger of claim preclusion from the Bankruptcy Court, but it would not affect issue preclusion in respect of matters actually decided by the Bankruptcy Court, because "issue preclusion applies even in the absence of a final judgment." *McNally*, 122 F. App'x at 903-04.

## II.   HARBINGER'S CLAIMS ARE INDEPENDENTLY BARRED BY THE RULE AGAINST CLAIM-SPLITTING AND THE DOCTRINE OF COLLATERAL ATTACK.

Whether or not flatly barred by *res judicata*, this action seeks impermissibly to split Harbinger's claims and to attack unlawfully rulings of the Bankruptcy Court for the same reasons that Judge Martinez dismissed the Colorado Action.   For those reasons (among many others), this action should be dismissed.

### A.   Harbinger May Not Relitigate for a *Third* Time Claims Based on the Facts at Issue in the Adversary Proceeding.

The rule against claim-splitting that the Colorado Court articulated applies with equal if not greater force in this Circuit.   "It is well established, under the doctrine of 'claim splitting,' that a party cannot avoid the effects of res judicata by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits." *Am. Stock Exch., LLC* v. *Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002).   "Rather, a party must bring in *one action all legal theories* arising out of the same transaction or series of transactions." *Id.*; *see Waldman* v. *Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000) ("[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit).").

Harbinger has now split the same cause of action into "separate grounds in [three] successive lawsuits." *Res judicata* applies when "the second suit involves the same 'claim'—or 'nucleus of operative fact[s]' as the first suit." *Waldman*, 207 F.3d at 108.   To decide whether two actions arise from the same "claim," the Second Circuit considers "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.*; *see Woods* v. *Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the

occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to frame her complaint."). "'[I]f the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action, and if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action,' then the claims in the second action are precluded." *AmBase Corp.* v. *City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003) (quoting *Ezzes* v. *Ackerman*, 234 A.2d 444, 445-46 (Del. 1967)).

As the Colorado Court detailed, Harbinger's complaints in the Adversary Proceeding (*see* Glueckstein Decl. Exs. C, D) and in the Colorado Action alleged materially overlapping facts. *Harbinger Colo.*, 2015 WL 2128901, at *9. The Colorado Court provided a chart illustrating the extensive factual overlap between the allegations in the Adversary Proceeding and in the Colorado Action. *Id.* With an added column for the allegations in Harbinger's latest Complaint, it is clear that overlap continues:

| Allegation | Adv. Proc. Compl. ¶¶ | Colo. Compl. ¶¶ | S.D.N.Y. Compl. ¶¶ |
|---|---|---|---|
| Harbinger's investment in LightSquared and LightSquared's descent into bankruptcy | 29-33 | 44-45, 49-51 | 55-56, 60-62 |
| Importance of the Stockholders' Agreement to Harbinger's investment | 1, 70 | 46-49 | 57-60 |
| Formation of SPSO to evade disqualification of DISH and Ergen as debt buyers | 36-51 | 64-71 | 76-83 |
| Use of "SP" in SPSO to suggest Sound Point ownership, thus deflecting suspicion from DISH and Ergen | 37 | 69 | 81 |
| Convincing LightSquared and affiliated parties, through false information, that SPSO is qualified to purchase LightSquared's debt | 52-59 | 72-75 | 84-87 |

| Allegation | Adv. Proc. Compl. ¶¶ | Colo. Compl. ¶¶ | S.D.N.Y. Compl. ¶¶ |
|---|---|---|---|
| Ketchum's, Sound Point's, and SPSO's importance as a front for executing the debt-buying scheme | 61-62 | 82 | 95 |
| SPSO's unusual delay in closing large debt trades, thus hindering LightSquared/Harbinger's ability to determine with whom it needed to negotiate a reorganization plan | 64-67 | 117, 140, 144-47 | 138, 163, 169-72 |
| LBAC's knowingly low $2 billion bid for LightSquared's spectrum, leaked to the press to disrupt plans for consensual reorganization | 74-78 | 87-88, 96-97, 105-10, 115-16 | 105-06, 115-16, 125-30, 136-37 |
| SPSO's reorganization plan, favorable to SPSO, on behalf of the Ad Hoc Secured Group | 79-81 | 119 | 140 |
| DISH board's independent committee evaluation of Mr. Ergen's actions toward LightSquared | 82 | 99-101 | 118-120 |
| Mr. Ergen's actions toward DBSD and similar distressed companies | 83–87 | 53–61, 130 | 64-72, 154 |
| Harbinger prevented by Defendants' actions from exercising control and guiding LightSquared to a reorganization that keeps Harbinger's equity intact | 1, 88–90 | 115, 123, 129, 149–51 | 136, 144, 150, 193-196 |

These allegations are part of the same "connected series of transactions" for *res judicata* purposes because all of the allegations "essential to the second [suit] were present in the first." *Prime Mgmt. Co.* v. *Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990). Indeed, Harbinger's allegations of a RICO "pattern of racketeering activity" are premised on the "relatedness" of the allegations here and those litigated to trial in the Adversary Proceeding. *See Singh* v. *Parnes*, 199 F. Supp. 2d 152, 159 (S.D.N.Y. 2002) (RICO claims barred because they were premised on alleged pattern of racketeering that "constituted the very heart of the fraud claims arising from

the same transactions or series of transactions and supported by the same evidence as those asserted" in prior proceedings).

   As in the Colorado Action, Harbinger "raises a number of other post-Special Committee Order actions that supposedly caused 'new injuries.'" *Harbinger Colo.*, 2015 WL 2128901, at *10 n.5.   Those "new" allegations challenge rulings or evidence before the Bankruptcy Court—specifically, that the "Bankruptcy Court has made rulings that have materially modified" its prior rulings (Compl. ¶ 46) and that Ergen and SPSO presented inaccurate testimony before the Bankruptcy Court (*id.* ¶ 7).   The Colorado Court correctly rejected these allegations because they were "for the Bankruptcy Court to deal with."  *Harbinger Colo.*, 2015 WL 2128901, at *10 n.5.   Harbinger's attempt to tack on new allegations to its instant Complaint concerning DISH's conduct in the FCC's "Auction 97" (Compl. ¶¶ 185-92) and the so-called "Peters Report" (*id.* ¶¶ 175-84) does not alter this analysis.   These are "nothing more than additional instances of what was previously asserted."[9]  *Waldman*, 207 F.3d at 113. Preclusion thus applies because Harbinger "has based [its] action principally upon the common nucleus of operative facts shared with" the Adversary Proceeding.  *Id.*  Additional incidents or claimed evidence of defendants' "motivation" does not set forth any new cause of action. *Cameron* v. *Church*, 253 F. Supp. 2d 611, 622 (S.D.N.Y. 2003).

---

[9]  Harbinger now alleges that certain defendants proffered expert testimony at trial to "illegally submit evidence" to the Bankruptcy Court (Compl. ¶ 175), and that Auction 97 motivated some defendants to manipulate the Bankruptcy Proceedings (*id.* ¶ 2).  Both of these purportedly "new" allegations illustrate, as the Colorado Court concluded, that Harbinger seeks only to impermissibly attack proceedings in the Bankruptcy Court, and to raise objections to those proceedings that have never even been presented to the Bankruptcy Court.  *Harbinger*, 2015 WL 2128901, at *10 n.5.

Harbinger also claims it "has sustained new injuries separate and apart from the injuries suffered by LightSquared—the *complete* loss of its equity interests and rights under the Stockholders' Agreement—as a result of the RICO Enterprise's continuing scheme." (Compl. ¶ 46 (emphasis in original).)   Yet, this is simply a dressed-up version of the same transaction: Harbinger alleges that it lost its equity interest *because* it lost its control rights.   (*E.g.*, Compl. ¶¶ 108, 136, 150, 151.)   Again, the Colorado Court rejected this same argument, finding that, even if "that loss of control rights could otherwise state a claim," adding allegations about the consequences of that loss of rights "changes nothing.   Given the Special Committee Order, Harbinger had no control anyway."   *Harbinger Colo.*, 2015 WL 2128901, at *10 n.5.   The Colorado Court likewise recognized that this "new" supposed "lost equity" injury is not new at all:   Harbinger claimed in the Bankruptcy Court that Defendants caused it to "'lose its unique controlling interest in the Debtors and suffer billions of dollars in damages.'"   *Id.* at *4 (quoting *LightSquared I* at 345).   Furthermore, pleading additional injuries from the same "connected series of transactions" does not save a complaint from *res judicata*.   *See Yaba* v. *Roosevelt*, 961 F. Supp. 611, 622 (S.D.N.Y. Apr. 16, 1997) ("[A]dditional incidents of alleged harassment . . . [are] insufficient to eliminate the res judicata bar.").

Remarkably, Harbinger has now raised the same claims, arising from the same nucleus of facts, in *three* successive lawsuits in three courts:   the Adversary Proceeding, the Colorado Action, and now here.   Harbinger's strategy of endless, iterative litigation on the same facts makes a mockery of the rule against "split[ting] [a] cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits."   *Am. Stock Exch.*, 215 F.R.D. at 91.   The Complaint should be dismissed with prejudice.

**B.**   **Harbinger's Claims Still Are an Impermissible Collateral Attack on the Bankruptcy Court's Rulings.**

The Colorado Court correctly observed that "[a] 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Harbinger Colo.*, 2015 WL 2128901, at *11 (quoting *Pratt* v. *Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004)).  As the Supreme Court has cautioned, "[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex Corp.* v. *Edwards*, 514 U.S. 300, 313 (1995) (citation omitted); *see also Catalano* v. *Applied Biometric Prods., Inc.*, 2003 WL 22004902, at *9 (S.D.N.Y. Aug. 25, 2003) ("A collateral attack is no substitute for an appeal.  Having had a full opportunity to litigate his objections, petitioner's dissatisfaction with the outcome is not a basis for relitigation.").

This action is no less of a collateral attack in this Court than it was in Colorado. *Johnson* v. *Manhattan Ry. Co.*, 289 U.S. 479, 495-96 (1933) ("That their suit was brought in the same court where the other suit was pending did not make the attack any the less collateral."). As the Colorado Court found, Harbinger's claims are an impermissible collateral attack on the Bankruptcy Court's Special Committee Order directing that all significant decisions and actions "shall be made by the independent committee of LightSquared's board of directors."  (Compl. ¶ 148; Bid Procedures Order at 1 n.3 & Schedule 1 n.1.)  *See also LightSquared III* at 67 n.18. Harbinger may not here challenge the propriety of the Bankruptcy Court rulings by contending they were issued erroneously "[b]ased upon Defendants' misrepresentations" and "to eliminate the purported conflict falsely alleged by Defendants."  (Compl. ¶ 16.)  This action should be dismissed for the same reasons set forth in the Colorado decision.

Moreover, Harbinger never objected to the Special Committee Order.  Nor did Harbinger ever pursue any of its available remedies, including seeking reconsideration of the relevant orders, filing a motion pursuant to Fed. R. Civ. P. 60(b), or raising that issue in any of its numerous attempted appeals to this Court.  Harbinger's remedy, if any, is to seek review of the Bankruptcy Court's orders in accordance with the governing substantive and procedural rules, *not* to seek to overturn indirectly those orders in a civil damages action.  *Chicot Cnty. Drainage Dist*. v. *Baxter State Bank*, 308 U.S. 371, 376 (1940) (a court's "determinations of such questions, while open to direct review, may not be assailed collaterally").  This Court therefore must reject this "impermissible collateral attack" because all of Harbinger's claims are premised upon some error or irregularity in the Bankruptcy Court's orders.  *Spartan Mills* v. *Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997).

That Harbinger seeks damages does not excuse its collateral attack.  *Pratt*, 365 F.3d at 519.  "[E]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Harbinger Colo.*, 2015 WL 2128901, at *11 (quoting *Miller* v. *Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)); *see also In re Am. Basketball League, Inc.*, 317 B.R. 121, 128 (Bankr. N.D. Cal. 2004) (a collateral attack "seeks, through a second suit, to avoid or evade the earlier judgment, or to deny its force and effect").  In *Miller*, the Fifth Circuit held that a similar action asserting fraud in plan confirmation proceedings "obviously turns upon what could or should have happened in the bankruptcy proceeding," and thus affirmed dismissal of the complaint.  *Miller*, 462 F.2d at 360-61.  That conclusion applies squarely to this attempt by Harbinger to seek damages for "what could or should have happened" before the Bankruptcy Court.

Nor can Harbinger evade the doctrine of collateral attack by claiming that it also seeks damages here for its loss of "equity" in addition to its loss of "control rights." (Compl. ¶ 197.) As explained above (*see* pp. 33-34, *supra*), this theory is not new, and Harbinger made iterations of the same claim in both the Bankruptcy Court and the Colorado Court. Further, Harbinger's claimed loss of equity, just like its claimed loss of contractual rights, is inextricably premised on the alleged impropriety of the Bankruptcy Court's Special Committee Order and thus is an impermissible collateral attack. *See, e.g.*, *Way* v. *Georgiades*, 1997 WL 196647, at *1 (9th Cir. Apr. 21, 1997) (affirming dismissal on basis that "complaint, which alleged a RICO violation, in effect was trying to challenge collaterally several decisions of the U.S. District Court"); *In re Christ Hosp.*, 502 B.R. 158, 177-78 (Bankr. D.N.J. 2013) (state law proceeding asserting tort claims arising from bankruptcy court-ordered sale is an impermissible "collateral attack on bankruptcy court orders and the bankruptcy sale process").

## III.   HARBINGER HAS FAILED TO PLEAD A PLAUSIBLE CIVIL RICO CLAIM.

Harbinger also does not plausibly plead the required elements of its RICO claims. To state a claim under Section 1962(c), "'a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Miller* v. *Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 551 (S.D.N.Y. 2014) (quoting *Sedima* v. *Imrex Co.*, 473 U.S. 479, 496 (1985)). A plaintiff must also plead specific, non-speculative injury, *see Kimm* v. *Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006), and allege that the racketeering activity was the "proximate cause" of its injuries, *Hemi Grp., LLC* v. *City of N. Y.*, 559 U.S. 1, 9 (2010). Harbinger has not pled any of these essential elements.

## A.    Harbinger Pleads No Plausible Injury.

RICO provides a private cause of action only for a person "injured in his business or property by reason of a violation of section 1962." *Hemi Grp.*, 559 U.S. at 6 (quoting 18 U.S.C. § 1964(c)); *see Kerik* v. *Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014) ("The plaintiff must allege injury that is 'to [his] property, and not, for example, physical, emotional or reputational harm.")  "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Makowski* v. *United Bhd. of Carpenters & Joiners of Am.*, 2010 WL 3026510, at *12 (S.D.N.Y. Aug. 2, 2010) (quoting *Maio* v. *Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000)).

Harbinger has not made this showing, and it may not make this showing under the governing law of this case.  As in Colorado and here, Harbinger argued before the Bankruptcy Court that it had a property interest in its "control rights" over LightSquared.  The Bankruptcy Court rejected this argument as a matter of law, holding that "Harbinger does not have . . . a protectable commercial advantage in exercising control rights over the Debtors' . . . once the Debtors sought chapter 11 protection." *LightSquared I* at 355.  The Bankruptcy Court further held that "[t]he Debtors' chapter 11 filings mean that any such 'control rights' Harbinger may have had prepetition **were relinquished** to the Debtors as debtors-in-possession and fiduciaries for all stakeholders, **as of the Petition Date**"—*i.e.*, well over a year before the Special Committee Order.  *Id.* (emphasis added).  By statute, LightSquared, as a debtor-in-possession, operates subject to "such limitations or conditions as the court prescribes."  11 U.S.C. § 1107(a). Following the appointment of the Special Committee, the "Bankruptcy Court explicitly found in its Confirmation Order that LightSquared, through the Special Committee, has 'upheld its fiduciary duty to stakeholders and protected the interests of all constituents with an even hand.'" *LightSquared IV* at 531.

In chapter 11 proceedings, a bankruptcy court thus "has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests." *In re Gaslight Club, Inc.*, 782 F.2d 767, 770 (7th Cir. 1986); *see, e.g.*, *In re Acequia, Inc.*, 787 F.2d 1352, 1362 (9th Cir. 1986) (affirming bankruptcy court order removing voting rights from 50% shareholder "to preserve the prospects of reorganization and protect the interests of creditors"). The Bankruptcy Court held that Harbinger's challenges to Defendants' bankruptcy-related conduct was governed by bankruptcy laws and procedures, not tort laws. *LightSquared I* at 355.

As the Bankruptcy Court ruled correctly, following LightSquared's bankruptcy filing, Harbinger's contractual "control rights" incident to its underwater equity ceased to be a protectable property interest, and it thus may not serve as the basis for a RICO claim.[10] These rulings are not only legally correct, they constitute the law of this case that should not be revisited here absent "cogent and compelling reasons." *Oakley Fertilizer Inc.* v. *Hagrpota for Trading & Dist., Ltd.*, 2012 WL 5844193, *2 (S.D.N.Y. Nov. 16, 2012). The law of the case doctrine applies in respect of the same or previous litigation between the same parties, *id.*, and "bars reconsideration of rules of law enunciated by trial and appellate courts in previous litigation between the parties." *Schupak* v. *Califano*, 454 F. Supp. 105, 113-14 (E.D.N.Y. 1978). "[W]here litigants have once battled for the court's decision, they should neither be required, nor

---

[10]     Indeed, under Delaware law that governs the rights among LightSquared and its shareholders, once insolvent, "the firm's creditors . . . become its residual claimants and the advancement of their best interests has become the firm's principal objective." *Trenwick Am. Litig. Trust* v. *Ernst & Young*, 906 A.2d 168, 175 (Del. Ch. 2006). In short, under Delaware law, those in "control" of LightSquared were required to act in the interests of the company and its creditors, not Harbinger and its other equity holders.

without good reason permitted, to battle for it again." *Zdanok* v. *Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir.), *cert. den.*, 377 U.S. 934 (1964).

In any event, Harbinger has not alleged, as it must, that it has suffered a "concrete financial loss" from any RICO predicate acts.  Harbinger instead alleges that, as a result of the Special Committee Order, it lost "expansive rights . . . to (1) appoint and remove the majority of the LightSquared board; (ii) designate committee members; (iii) chair committees; and (iv) approve critical management business decisions through its board votes."  (Compl. ¶ 193.) Yet, these "rights" ware "taken," if at all, by a federal court order.  *Harbinger Colo.*, 2015 WL 2128901, at *10 n.5.  And Harbinger nowhere contends that, under any plausible scenario, it could keep any such "control rights" following the resolution of LightSquared's Bankruptcy Cases, and Harbinger's own reorganization plans gave it no such rights.  *LightSquared III* at 76 & n.32.  Indeed, as Harbinger itself has pleaded, its investment and control rights were doomed by the Bankruptcy Cases and the FCC's decision-making.[11]  In short, Harbinger fails to allege that these intangible rights can be monetized or quantified under any metric.  *See McLaughlin* v. *Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) (the plaintiff "must allege actual, quantifiable injury").

Harbinger's newly added allegation that it suffered damages from its supposedly "massive reduction in its equity interests" under the Second Amended Joint Plan (Compl. ¶ 197) is equally flawed.  In confirming the Second Amended Plan, the Bankruptcy Court ruled, affirmed by this Court on appeal, that the equity held by LightSquared was worthless: "the post-

---

[11]     *See, e.g.*, Compl., *Harbinger Capital Partners, LLC, et al.* v. *United States of America*, 14-cv-00597-MCW (Ct. Cl. July 11, 2014) ¶ 131 ("The *Government's* actions . . . have deprived Harbinger of the entire value of its interest in LightSquared[] and have destroyed Harbinger's reasonable investment-backed expectations.") (emphasis added).

reorganization value of all LightSquared assets (combining [all of the debtors]) nonetheless did not exceed the amount of debt and preferred stock liquidation preferences senior to common equity interests." *LightSquared IV* at 532.  Harbinger thus fails to allege that any loss in equity may be quantified so as to constitute a "concrete financial loss."  *Makowski*, 2010 WL 3026510, at *12.  In the absence of the Second Amended Joint Plan, Harbinger's prior equity interest would have been worth nothing at all as LightSquared's debts far exceeded the value of its assets.  *LightSquared IV* at 532.  Harbinger's theory that its *retention* of equity represents some sort of loss is thus purely hypothetical and cannot support a RICO claim.  *See DeSilva* v. *North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 522 (E.D.N.Y. 2011) ("[P]laintiffs' alleged injury for their hypothetical inability to recover does not state a RICO claim that is ripe for adjudication.").  Finally, as Harbinger concedes, the Second Amended Joint Plan has not yet gone into effect, and there is no assurance that it will become effective.  (Compl. ¶ 197.)  Thus, at this stage, Harbinger's alleged loss of equity is "too speculative to constitute an injury to business or property."  *Kimm*, 196 F. App'x at 16; *see also Tsipouras* v. *W&M Properties, Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998).

**B.    Harbinger Has Not Alleged a Direct Causal Connection Between the Alleged Predicate Acts and Injury.**

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'"  *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes* v. *Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Id.* (quoting *Holmes*, 503 U.S. at 271, 274).  "[I]t is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege either an adequate injury to business or property, or an

- 41 -

adequate causal nexus between that injury and the predicate acts of racketeering activity alleged." *Brandenburg* v. *Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988) (citations omitted).

The Supreme Court has held that the "proximate cause" requirement cannot be met by indirect injuries or where there is an intervening causal step between the alleged predicate acts and injury. For example, in *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451, 457-60 (2006), the Supreme Court rejected as a matter of law a RICO claim because, even though the predicate RICO acts—the unlawful failure to collect sales taxes—were "but for" causes of the alleged harm, the failure of defendants to collect and remit taxes was not a direct cause of plaintiffs' lost sales and profits. Rather, that harm was caused by defendants' use of proceeds from the fraud to offer lower prices, which establishes no proximate cause. *See also In re Bennett Funding Grp., Inc.*, 367 B.R. 302, 329 (Bankr. N.D.N.Y. 2007) (intervening causes of alleged injury in a bankruptcy, including decisions of the bankruptcy court, destroyed proximate causation for RICO claim). The Complaint here suffers from the same defects.

*First*, Harbinger does not adequately allege a "direct relationship" between the alleged predicate acts and Harbinger's supposed injury. Harbinger acknowledges that the Complaint is "based on losing specific rights it once had under the Stockholders' Agreement." (Compl. ¶ 49.) Harbinger surmises that the Bankruptcy Court erroneously divested Harbinger of its rights based upon an alleged "artificial conflict raised by SPSO" (among others) as the cause of Harbinger's injury. (*Id.* ¶ 144.) But Harbinger has not—and cannot—allege that it would have retained those control rights now or in the future absent the challenged SPSO conduct. *See Bastian* v. *Petren Res. Corp.*, 892 F.2d 680, 686 (7th Cir. 1990) (if plaintiff would have been in the same position "regardless of the defendants' violations of RICO, they have incurred no loss for which RICO provides a remedy").

*Second*, Harbinger concedes it lost these control rights as a result of the Special Committee Order.  (Compl. ¶¶ 2, 16.)  Harbinger likewise admits that its claimed loss of equity also resulted from the Special Committee Order.  (*See* pp. 33-34, *supra*.)  Yet Harbinger never contended in the Bankruptcy Proceedings that the Bankruptcy Court's decision was improper or contested the new Board members appointed to serve on that committee.  And, the Bankruptcy Court held that the Special Committee adhered to its legal duty to act in the interests of all LightSquared stakeholders, including Harbinger.[12]  *LightSquared IV* at 531.  If Harbinger was deprived of some enforceable legal or contractual right to better treatment, that is the result of intervening acts or omissions of third parties.

Harbinger thus pleads no plausible theory of direct causation.  *See, e.g.*, *Avalos* v. *IAC/Interactivecorp.*, 2014 WL 5493242, at *6 (S.D.N.Y. Oct. 30, 2014) (dismissing RICO claims premised on third party conduct as "fail[ing] to establish proximate cause for the purposes of a civil RICO action, because 'when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.'") (quoting *First Nationwide Bank* v. *Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).  In fact, a substantial part of the events alleged in the Complaint (and *all* of the supposedly "new" allegations here) post-date the Bankruptcy Court order divesting Harbinger of control over LightSquared.  These supposed acts could not possibly serve as the basis for a RICO claim.  *Illinois* v. *Brown*, 227 F.3d 1042, 1046 (7th Cir. 2000) ("plaintiffs

---

[12]     Harbinger acknowledges that its rights were further impacted by other events having nothing to do with the Defendants, including the control exerted by the LightSquared Special Committee.  (Compl. ¶¶ 16, 149.)

would not be able to prove causation" where "defendants allegedly served as a conduit for the loan . . . after the injuries to the State had already occurred") (emphasis in original).

*Third*, in a civil RICO case such as this, premised on fraud, to establish causation a plaintiff must plead that the recipient relied upon the alleged misstatements. *Sky Medical Supply Inc.* v. *SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 234 (E.D.N.Y. 2014). Harbinger here nowhere alleges reliance by anyone on any supposed misstatement.

*Finally*, Harbinger's theories are defective for the separate reason that Harbinger was a proponent of, and agreed to, the LightSquared plan that grants it reduced equity and eliminates its control rights. Rather than seeking to enforce its contractual "control rights," Harbinger agreed to forego those rights, which *breaks* any causal chain. As Harbinger acknowledges, it "**supported** the Second Amended Joint Plan, pursuant to which it **accepted** a massive reduction in its equity interests." (Compl. ¶197 (emphasis added).) Harbinger's decision to support the pending Second Amended Joint Plan and its agreement to a reduction in equity thus "constitute[s] an intervening cause breaking the chain of causation between [the alleged] misrepresentations and [Harbinger's] injury." *Bridge* v. *Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008).

## C.    Harbinger Has Not Alleged a "Pattern" of Racketeering Activity.

"[T]he heart of any RICO complaint is the allegation of a *pattern* of racketeering." *Agency Holding Corp.* v. *Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987) (emphasis in original). "[T]o prove a pattern of racketeering activity, a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.* v. *Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). The Complaint does not satisfy either of these requirements.

**Relatedness.**  "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Schlaifer Nance & Co.* v. *Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (quoting *H.J. Inc.*, 492 U.S. at 240).  The "predicate acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)."  *United States* v. *Daidone*, 471 F.3d 371, 375 (2d Cir. 2006).  But here, many of the alleged predicate acts have no apparent relationship to each other, let alone to Harbinger or to any supposed "Fraudulent Scheme."  For example, many supposed predicate acts relate to DISH's acquisition of DBSD in 2009 and unsuccessful attempt to acquire Clearwire in 2012 and 2013.  (Compl. ¶ 209, Table 1.)  That DISH desires spectrum and spectrum assets were involved in several transactions over many years is irrelevant.  *Reich* v. *Lopez*, 38 F. Supp. 3d 436, 452 (S.D.N.Y. 2014).  The Complaint does not plead that those potential transactions related in any way to the alleged *unlawful* objective here, stripping Harbinger's control rights in order to facilitate the acquisition of *LightSquared's* spectrum assets.  (Compl. ¶¶ 12, 73, 136, 203.)

There is no relatedness among Harbinger's alleged predicate acts for a host of other reasons.  First, a majority of Defendants—LBAC, SPSO, SOH, Sound Point and Mr. Ketchum—had no involvement with those earlier proposed transactions.  Second, Harbinger's citation to the Second Circuit's decision in DBSD's bankruptcy proceedings (Compl. ¶ 69; *see In re DBSD N. Am., Inc.*, 634 F.3d 79, 101-06 (2d Cir. 2011)), establishes no relevant relationship between those events in 2009 and Harbinger's grievance here.  The *DBSD* case had nothing to do with torts or racketeering, "as its holding was limited to vote designation in connection with the purchase of claims for the strategic purpose of blocking a filed plan of reorganization."

*LightSquared I* at 354.  Third, the Complaint fails to explain how alleged conduct occurring *after* Harbinger lost its "control rights" in September 2013 could be related to a purported scheme to "strip" Harbinger of its control rights.  (Compl. ¶¶ 151-92.)

In short, Harbinger's array of supposed predicates fails to meet the "relatedness" requirement for the same reasons as in *Reich* v. *Lopez*, where Judge Oetkin observed that "very little link[ed]" the alleged predicates "[b]eyond the fact that Defendants are the alleged perpetrators," the alleged predicates had "dissimilar victims," and "the establishment of a uniform purpose underlying" the alleged predicates was "highly tenuous."  38 F. Supp. 3d at 452; *see also Ray Larsen Assocs., Inc.* v. *Nikko Am., Inc.*, 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996) ("Although the two types of conduct may be interrelated in the sense that both have the effect of generally increasing defendants' funds, the relationships between the two types of conduct is simply too remote to support a claim under RICO.").

**Continuity.**  The "continuity" requirement may be satisfied either by a "closed period of repeated conduct" or by "past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc.*, 492 U.S. at 241.  But "[c]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity."  *Evercrete Corp.* v. *H-Cap Ltd.*, 429 F. Supp. 2d 612, 624-25 (S.D.N.Y.).  The purported object of Defendants' "scheme" was to strip Harbinger of its control rights while pursuing LightSquared's spectrum.  (Compl. ¶ 1.)  That singular and discrete object—acquiring LightSquared spectrum assets—cannot support a RICO claim.  *See Crawford* v. *Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488-49 (2d Cir. 2014) ("[M]ultiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot

constitute the necessary pattern.") (citation omitted); *Pier Connection, Inc.* v. *Lakhani*, 970 F. Supp. 72, 78 (S.D.N.Y. 1995) ("closed-ended" continuity absent where complaint "demonstrates that Defendants engaged in one scheme whose single goal was to seize control of [plaintiffs'] business").   Finally, stripped of its irrelevant references to prior DISH spectrum acquisitions, the allegations here lack the temporal longevity necessary to establish continuity.  *Reich*, 38 F. Supp. 3d at 452-53.

### D.  The Complaint Does Not Adequately Allege that Defendants Committed Any RICO Predicate Acts.

A RICO pattern of racketeering activity must consist of two or more predicate acts, as defined in 18 U.S.C. § 1961(1).  *Sedima*, 473 U.S. at 481-82.  Because Harbinger has not adequately alleged that Defendants committed any predicate act, its RICO claims cannot stand.

### 1.  Harbinger Does Not Adequately Allege Wire Fraud.

In order to avoid litigation abuse, the Second Circuit has instructed that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Crawford*, 758 F.3d at 489 (citation omitted).  "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires."  *United States* v. *Autuori*, 212 F.3d 105, 115 (2d Cir. 2000).  The first element requires a showing of "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations."  *United States* v. *Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citations omitted).

"Where . . . the predicate acts on which a RICO claim is based in fraud, those acts must be pleaded in conformity with Rule 9(b)'s heightened pleading standard."  *Cont'l*

*Petroleum Corp., Inc.* v. *Corp. Funding Partners, LLC*, 2012 WL 1231775, at *4 (S.D.N.Y. Apr. 12, 2012).   To do so, a complaint "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why those statements were fraudulent."  *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).   Harbinger has not done so.

### a.      *Harbinger Cannot Claim SPSO Misrepresented that it Was an Eligible Assignee under the Credit Agreement.*

The allegation that SPSO misrepresented that it was an Eligible Assignee of LightSquared LP's debt (Compl. ¶ 84) fails as a matter of law.   LightSquared's Credit Agreement prohibited acquisitions of its debt by "'any operating company which is a direct competitor of [LightSquared],' and [was listed] on Schedule 1.01(a) [of the Credit Agreement], as well as 'any known subsidiary thereof.'"  *LightSquared II* at 315-16.   Harbinger does not allege (because it cannot) that SPSO was a competitor of LightSquared listed on Schedule 1.01, and the Complaint admits that **SPSO is not a subsidiary of DISH or EchoStar**.  (*See* Compl. ¶ 32.)   By its terms, SPSO was an "Eligible Assignee" under the Credit Agreement, defeating any claim that SPSO's eligibility was "misstated."

Harbinger litigated and lost this same issue in the Adversary Proceeding.   There, Harbinger alleged that SPSO "made false and misleading affirmative statements of material fact" when it represented that it was an "'Eligible Assignee' allowed to purchase the [LP] Debt." (Glueckstein Decl. Ex. C (Adv. Proc. Compl.) ¶ 98.)   The Bankruptcy Court disagreed, expressly holding that "**SPSO is an Eligible Assignee**" and "**was not precluded by the express terms of the Credit Agreement from purchasing the LP Debt**."  *LightSquared II* at 316-17 (emphasis added).   Thus, the contention that SPSO failed to meet the enumerated criteria to be an Eligible Assignee has been fully and fairly litigated on the merits and squarely rejected.   It is the law of

this case unless overturned by this Court on appeal.  It may not be raised again here.  This assertion also fails because "those allegations amount merely to a breach of contract claim, which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent."  *Carr* v. *Tillery*, 591 F.3d 909, 918 (7th Cir. 2010).

### b.    *The Complaint Does Not Plausibly Allege that Statements Made in Connection with LBAC's Bid Were Fraudulent.*

Harbinger also contends that certain Defendants committed wire fraud by "making knowing misrepresentations to the [Chapter 11] parties and the Bankruptcy Court" that LBAC's $2.2 billion bid for LightSquared's LP assets was "for fair value" and by arguing that the Harbinger-appointed LightSquared board was not acting in the best interest of LightSquared LP's secured creditors.  (Compl. ¶¶ 131, 134.)  These allegations are meritless.

A claim of wire fraud fails absent a specific allegation of a "fraudulent" statement.  *See Lerner*, 459 F.3d at 290.  Harbinger nowhere alleges that any Defendant said that the $2.2 billion bid was "for fair value," much less pled it with the specificity required by Rule 9(b).  *Id.*  Reviewing the same allegations, the Colorado Court observed that "Harbinger nowhere alleges exactly where or when this allegedly false representation of fairness took place."  *Harbinger Colo.*, 2015 WL 2128901, at *10.  The Colorado Court likewise gave short shrift to the notion that "a 'fair' bid" could amount to a misstatement of fact:  "In everyday life, parties regularly bid low, sometimes laughably low.  That does not make such bids unfair."  *Id.*  In any event, Harbinger cannot plausibly allege that the $2.2 billion bid—for two years, the ***only*** cash bid ever made at any price for LightSquared's L-Band Spectrum—reflected something other than "fair value."

That Mr. Ergen and DISH at some earlier date prepared or received valuations suggesting a greater value for LightSquared's troubled assets compared to the bid offered by

LBAC (*see* Compl. ¶¶ 127-29) in no way suggests that the LBAC bid was not "fair" or the best value available for the LightSquared estate.  It is basic economics that the value of an asset is what the market is willing to pay for it.  *See In re Granite Broad. Corp.*, 369 B.R. 120, 143 (Bankr. S.D.N.Y. 2007) ("the best evidence of value is what a third party is willing to pay in an arm's length transaction").  And while Harbinger claims that the LBAC bid would not have maximized value, LightSquared at that time received *no other bids* for its assets despite Harbinger's assertion that the LBAC offer was allegedly "inadequate," "unreasonably low," and "grossly undervalued."  (Compl. ¶¶ 132-33.)

In all events, these characterizations are not actionable misstatements, but only irrelevant opinion.  Harbinger's claim that counsel for some Defendants argued that the LightSquared estate was not "governed by a typical, non-conflicted fiduciary" because the board appeared to be advancing Harbinger's agenda rather than "maximiz[ing] the value of its estates for the benefit of their stakeholders" (Compl. ¶ 134) reflects advocacy that is not actionable.  *See Broyles* v. *Wilson*, 1993 WL 347222, at *9 (5th Cir. Aug. 19, 1993) (statement that party "engaged in unethical practices" was "merely a statement of opinion, not evidence of a pattern of racketeering").  Likewise, a claim that the LBAC bid was "fair" or value maximizing is also non-actionable opinion.  *See In re Baillio*, 2010 WL 3782065, at *12 n.22 (Bankr. D.N.M. Sept. 21, 2010) ("Defendant's representation that the deal was 'solid' was an opinion.  Opinions are not false representations of existing or prior facts.").  Indeed, there is no dispute that LBAC's offer was "sufficient to pay off in full the holders of [LightSquared's] LP Debt" (Compl. ¶ 13), which makes clear that any adjectives applied to the bid are nothing more than advocacy and opinion.

## 2.    The Complaint Fails to Allege Bankruptcy Fraud.

Harbinger next alleges bankruptcy fraud and obstruction of justice arising out of various purported transgressions by Defendants in the Bankruptcy Proceedings.  (*See* Compl.

¶¶ 177-78.)  But Harbinger cannot raise here claims based on alleged obstruction of justice and fraud arising out of conduct in an action still pending in the Bankruptcy Court.  *See Rafferty* v. *Halprin*, 1991 WL 148798, at *6-7 (S.D.N.Y. July 26, 1991) (rejecting the "improper use of the civil RICO statute" to predicate a claim on obstruction of justice in a pending case).  Such claims "can and accordingly must be presented in the court in which the civil action giving rise to the alleged obstruction is pending."  *Id.* at *7; *Weldon* v. *United States*, 70 F.3d 1, 5 (2d Cir. 1995) (allegations of fraud on the court must be raised directly).

In any event, Harbinger fails to allege any Defendant's specific knowing and fraudulent actions specifically prohibited by 18 U.S.C. § 152.[13]  The Complaint alleges that SPSO "purposefully delayed the closing of trades to interfere with the provision of the Exclusivity Order" and "later joined the Ad Hoc Secured Group to preserve its majority and uphold the sale provisions, violating the Exclusivity Order."  (Compl. ¶ 210.)  While Harbinger never even attempts to explain how joining the Ad Hoc Secured Group violated the Exclusivity Order, these allegations are irrelevant because they do not concern any conduct prohibited under the statute.  *See generally* 18 U.S.C. § 152.

The allegations that certain Defendants made false statements during the course of the Adversary Proceeding also fall short.  Section 152(2) prohibits "knowingly and fraudulently mak[ing] a false oath or account in or in relation to any case under title 11."  18 U.S.C. § 152(2).  Bankruptcy fraud allegations must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See First Capital Mgmt., Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).  Harbinger fails to plead with particularity any facts that demonstrate that any of the statements at

---

[13]     Harbinger cannot rely upon general bankruptcy fraud under 18 U.S.C. § 157, which is expressly excluded as a predicate act for purposes of RICO.  *See* 18 U.S.C. § 1961(1)(D).

issue were actually "false" or made with "the intent to deceive." *United States* v. *Sabbeth*, 262 F.3d 207, 217 (2d Cir. 2001).

For example, Harbinger alleges generally that Defendants made "repeated material misrepresentations" relating to the reasons for the delays in the closing of SPSO's debt trades and that "the delays were entirely the result of Defendants' stonewalling." (Compl. ¶ 170.) But Harbinger never bothers to plead particular facts about these purported falsities— there are no specific allegations as to who, what, when or how events took place. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 237 (S.D.N.Y. 2003) ("[P]articularity means the who, what, when, where, and how: the first paragraph of any newspaper story.") (citation omitted, emphasis in original). And while Harbinger alleges that "Defendants" (which one is not revealed) gave false testimony regarding "Defendants' reasons for terminating the Stalking Horse Bid," Harbinger identifies no such testimony and alleges no "fraud." Instead, it is beyond dispute that the Bankruptcy Court held that, since certain milestones were not met, LBAC was entitled to terminate its bid for any reason or for no reason, and that it did so lawfully. *LightSquared III* at 73 n.27.

Harbinger is left to argue that the Bankruptcy Court's credibility determinations during the course of a multi-week trial amount to bankruptcy fraud. Not so. The Bankruptcy Court's purported skepticism does not suffice to plead *with particularity* that the testimony was false. *See Rodriguez-Gutierrez* v. *INS*, 59 F.3d 504, 507 (5th Cir. 1995) ("[T]hat testimony lacked credibility does not alone justify the conclusion that false testimony has been given."). And, there is no causal connection between these allegations about testimony in a trial months *after* Harbinger was stripped of its "control rights." *See Hemi Grp.*, 559 U.S. at 9. While Harbinger contends that the testimony was intended to "conceal the Fraudulent Scheme"

(Compl. ¶ 166), "actions, even if themselves illegal, taken in an effort to cover up a criminal scheme" establish no predicate act.  *Jennings* v. *Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007).

### 3.     The Complaint Fails to Allege Obstruction of Justice.

Obstruction of justice involves "influenc[ing], intimidat[ing] or imped[ing]" officers or jurors of United States courts.  18 U.S.C. § 1502(a).  To establish the offense, the following elements must be pleaded:  "(1) that there is a pending judicial or grand jury proceeding constituting the administration of justice, (2) that the defendant knew or had notice of the proceeding, and (3) that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding . . . that is, 'that the defendant ***corruptly intended*** to impede the administration of that judicial proceeding.'"  *United States* v. *Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) (emphasis added, citation omitted).

Here, Harbinger alleges only that Defendants (i) sought to interfere with negotiations between Harbinger and the Ad Hoc Group of LightSquared LP debt holders, (ii) delayed the closing of trades in LP Debt, (iii) violated the Bankruptcy Court's exclusivity order, and (iv) submitted the "Peters Report."  (Compl. ¶ 211.)  These allegations do not state a claim for "corruptly intend[ing] to impede" the Bankruptcy Court.  *See Med. Supply Chain, Inc.* v. *Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1329 (D. Kan. 2006) (dismissing RICO claim and noting "Plaintiff's allegations have nothing to do with unlawfully influencing a juror or officer of the court").  A claim that some Defendant interfered with Harbinger's or LightSquared's business states no claim.  *United States* v. *Aguilar*, 515 U.S. 593, 599 (1995) ("[t]he action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding").

Harbinger resorts to arguing that a discovery dispute about DISH's alleged failure to timely produce certain documents amounts to obstruction of justice. (Compl. ¶ 211.) That is wrong. This *still-pending* discovery dispute before the Bankruptcy Court may not be litigated in this Court. And routine document production disputes cannot be refashioned into a federal case for obstruction of justice. *See*, *e.g.*, *Richmark Corp.* v. *Timber Falling Consultants, Inc.*, 730 F. Supp. 1525, 1532 (D. Or. 1990) ("In light of the extensive framework of rules and remedies provided for the resolution of civil discovery disputes, the court declines to stretch the definition of obstruction of justice to include the concealment or withholding of discovery documents as alleged by TFC."); *Pelullo* v. *Nat'l Union Fire Ins. Co. of Pittsburgh*, 2004 WL 1102782, at *19 (E.D. Pa. May 17, 2004). The Bankruptcy Court itself rejected Harbinger's previous "impermissible attempt to turn a party's participation in the chapter 11 process (which is governed by Code provisions dealing with the termination of exclusivity and other related concepts) into a tort." *LightSquared I* at 355.

### E.   Neither DISH, LBAC nor the Sound Point Defendants Directed Any Enterprise.

A plaintiff can only recover under 18 U.S.C. § 1962(c) against those who "participate in the operation or management of the enterprise itself." *Reves* v. *Ernst & Young*, 507 U.S. 170, 185 (1993). Under this standard, "a person may not be held liable merely for taking directions and performing tasks 'that are 'necessary and helpful to the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'" *N.Y.C.* v. *FedEx Ground Package Sys., Inc.*, 91 F. Supp. 3d 512, 524 (S.D.N.Y. 2015) (citation omitted). "Instead, the defendant 'must have played '*some* part in directing [the enterprise's] affairs.'" *Id.* (citation omitted, emphasis in original); *see also LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*,

951 F. Supp. 1071, 1090 (S.D.N.Y. 1996) ("[T]he 'operation and management' test set forth in *Reves* . . . is a very difficult test to satisfy.").

### 1.       Neither DISH nor LBAC Directed Any Enterprise.

The Complaint does not allege that either DISH or LBAC played a role in "directing" the affairs of the alleged enterprise.  Harbinger's assertion that the DISH Board of Directors (other than Mr. Ergen) "facilitated and tacitly approved" the supposed "Fraudulent Scheme" (Compl. ¶¶ 96-98) does not constitute "exerting control over the enterprise."  *Dubai Islamic Bank* v. *Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003); *see also Redtail Leasing, Inc.* v. *Belleza*, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely be engaging in wrongful conduct that assists the enterprise.").[14]

### 2.       The Complaint Fails to Plead that the Sound Point Defendants Directed the RICO Enterprise.

Harbinger alleges no facts suggesting that either Mr. Ketchum or Mr. Ketchum's firm, Sound Point, had any role in directing the affairs of a RICO enterprise.  Harbinger alleges only that Mr. Ketchum and Sound Point provided "substantial assistance" by performing certain brokerage and banking services including (i) setting up SPSO as a vehicle for purchasing LP Debt on Ergen's behalf, (ii) serving as SPSO's broker and arranging the trades whereby SPSO purchased LP Debt, and (iii) signing purchase documentation representing that SPSO was eligible to purchase LP Debt. (*See* Compl. ¶¶ 9, 80-95.)  It is well-settled, however, that providing services such as these to an alleged RICO enterprise does not constitute "participation

---

[14]       To the extent that Harbinger seeks to impute Mr. Ergen's unilateral actions to DISH by way of a theory of agency, that same agency theory was advanced by Harbinger and rejected by the Bankruptcy Court. *LightSquared I* at 347.  It may not be repeated here.

in the conduct" of the enterprise.  *See, e.g.*, *Tech. in P'ship* v. *Rudin*, 2011 U.S. Dist. LEXIS 114127, at *11-12 (S.D.N.Y. Oct. 3, 2011) ("The provision of professional services in itself is insufficient to meet RICO's participation requirement because these services do not require taking part in the direction of the enterprise's affairs."); *Hayden* v. *Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) ("[T]he provision of professional services . . . to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO."); *Indus. Bank of Latvia* v. *Baltic Fin. Corp.*, 1994 U.S. Dist. LEXIS 8580, at *8 (S.D.N.Y. June 27, 1994) (dismissing RICO claim against bank and individual officers because providing "banking services—even with knowledge of the fraud—is not enough to state a claim under § 1962(c)").

While Harbinger attempts to avoid this result by characterizing the professional services provided by the Sound Point Defendants as fraudulent, the Bankruptcy Court already rejected that argument, finding that Harbinger failed to "explain or allege how these acts fall outside of normal bank and broker services." *LightSquared I* at 357; *see also CRT Invs., Ltd.* v. *BDO Seidman, LLP*, 925 N.Y.S.2d 439, 441 (1st Dept. 2011) ("'[S]ubstantial assistance,' a necessary element of aiding and abetting fraud, means more than just performing routine business services for the alleged fraudster.").

Harbinger's claim that the Sound Point Defendants "intentionally delayed the closing of large blocks of trades to interfere with the bankruptcy proceedings" (Compl. ¶ 95) fares no better, as the Complaint itself alleges that any delay in closing those trades occurred at the direction of the other Defendants.  (*Id.* ¶¶ 173, 225.)  Nor does Harbinger's conclusory allegation that Mr. Ketchum made misrepresentations to the Bankruptcy Court (*id*. ¶ 95)— without identifying any such misrepresentations—support an inference of control by the Sound

Point Defendants, as it fails to satisfy Rule 9(b).  *See D. Penguin Bros.* v. *City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) ("In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b).").

## IV.    HARBINGER FAILS TO PLEAD A RICO CONSPIRACY CLAIM.

Harbinger's section 1962(d) RICO conspiracy claim fails for the same reason that it has failed to allege critical elements of a section 1962(c) claim.  *See BWP Media USA Inc.* v. *Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014) ("Where a complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails.") (citations omitted).

Harbinger also fails to allege the requisite elements of a RICO conspiracy. "Conclusory allegations that 'all of the defendants conspired among themselves to further the scheme . . . ' and 'knowingly and willingly participated in the conspiracy' are insufficient." *U.S. Fire Ins. Co.* v. *United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 453-54 (S.D.N.Y. 2004) (citing *Adler* v. *Berg Harmon Assocs.*, 790 F. Supp. 1222 (S.D.N.Y. 1992)).  Here, Harbinger repeatedly and conclusorily alleges that Defendants "agreed" to various things but Harbinger does not allege any facts in support of those bare assertions.  (*See* Compl. ¶¶ 216-229.)  The failure to plead that any of Defendants "specifically agreed to further the alleged scheme through the commission or facilitation of any racketeering" is fatal to Harbinger's RICO conspiracy claim.  *Goldfine* v. *Sichenzia*, 118 F. Supp. 2d 392, 407 (S.D.N.Y. 2000).  Harbinger also fails to allege, as it must, (a) the existence of some independently tortious overt act in furtherance of the conspiracy, that (b) was the cause of its injury.  *Beck* v. *Prupis*, 529 U.S. 494, 505-07 (2000).

## V.    HARBINGER'S STATE LAW CLAIMS SHOULD BE DISMISSED.

Subject-matter jurisdiction for Harbinger's state law claims is based exclusively on supplemental jurisdiction under 28 U.S.C. § 1367.  (*See* Compl. ¶ 36.)  When the claims over

which a court has original jurisdiction are dismissed, "ordinarily so should the state law claims be dismissed" unless there are "compelling reason[s]" not to dismiss them.  *Torres* v. *City of N.Y.*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003).  Even so, Harbinger has not sufficiently pled any of its state law claims.

### A.   The Complaint Does Not Adequately Allege a COCCA Claim.

Harbinger's COCCA claims are mirror images of its RICO claims, and thus should be dismissed for the same reasons as its RICO claims.  Colorado courts have recognized that "COCCA is patterned after the federal Racketeer Influenced and Corrupt Organizations Act (RICO)" and so "federal decisions construing RICO may be instructive upon similar issues arising under the state statute."  *Floyd* v. *Coors Brewing Co.*, 952 P.2d 797, 803 (Colo. App. 1997); *see also People* v. *McGlotten*, 166 P.3d 182, 190 (Colo. App. 2007) ("Because COCCA was modeled after RICO, federal cases are instructive on this issue.").  "Because plaintiff[s'] RICO and COCCA claims thus are coextensive with one another, failure to plead a plausible RICO claim is fatal to any COCCA claim as well."  *Goodwin* v. *Bruggeman-Hatch*, 2014 WL 3057198, *2 n.5 (D. Colo. July 7, 2014).  As discussed above, Harbinger has failed to satisfy *any* of these pleading requirements, rendering its COCCA claims fatally deficient, and those claims must be dismissed.

### B.   Harbinger Fails to State a Claim for Tortious Interference with Contract.

To state a claim for tortious interference, a plaintiff must allege the defendant's knowledge of a valid contract, the intentional procurement of the actual breach of the contract, injury proximately caused by the breach, and damages.  *Lama Holding Co.* v. *Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996); *Pure Power Boot Camp, Inc.* v. *Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 532 (S.D.N.Y. 2011).  Harbinger has not stated a tortious interference claim against any Defendant for at least three reasons.

*First*, Harbinger does not plead that Defendants had "knowledge of the contract." *N. Shipping Funds I, L.L.C.* v. *Icon Capital Corp.*, 2013 WL 1500333, at *4 (S.D.N.Y. Apr. 12, 2013). Harbinger must allege that "defendants had knowledge of th[e] specific covenants [at issue], not just knowledge of the [Agreement] in general." *Id.* Yet all Harbinger alleges is that "[u]pon information and belief, at all relevant times herein, Defendants were aware of the Stockholders' Agreement and understood the importance of Harbinger's rights thereunder." (Compl. ¶¶ 57, 261.) Nowhere does Harbinger allege that any Defendant even saw the Stockholders' Agreement, let alone plausibly allege that any Defendant knew of the actual contractual provisions they purportedly caused LightSquared to breach. *N. Shipping*, 2013 WL 1500333, at *4.

*Second*, Harbinger fails even to allege any breach of the Stockholders' Agreement. Harbinger does not specify what provision of the Stockholders' Agreement was breached, how it was breached, or how it could have been breached given the Bankruptcy Court's Special Committee Order. A federal court order designed to deprive a party of its rights under a contract cannot be the basis for an actionable "breach" of the agreement. *See Kel Kim Corp.* v. *Cent. Mkts., Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987) (noting that the doctrine of "impossibility" excuses a party's performance when "the destruction of . . . the means of performance makes performance objectively impossible"). The Bankruptcy Court was within its power to issue such a ruling to protect the debtors' estates and the rights of creditors. *See* 11 U.S.C. §§ 105, 1107(a).

Harbinger has never brought a claim against LightSquared for this alleged breach, has never contended that the Bankruptcy Court's decision was improper or sought reconsideration or appeal from that Special Committee Order, and has never contested the

appointment of the LightSquared Special Committee in the Bankruptcy Proceedings.   For months Harbinger and the LightSquared Special Committee worked closely in formulating bankruptcy reorganization plans and, as the record in the Bankruptcy Proceedings confirms, maintained a common interest privilege—an admission that their interests were aligned. *LightSquared III* at 71.   In short, Harbinger has failed to allege a breach of contract and, therefore, its tortious interference claim must be dismissed.   *Israel* v. *Wood Dolson Co.*, 134 N.E.2d 97, 99 (N.Y. 1956) (tortious interference claim "must fail if there was no such breach.").

> *Third*, Harbinger's allegations do not establish any legally cognizable injury or causation.   Unless and until an appellate court vacates the Special Committee Order, Harbinger suffered no legal injury.   Nor does Harbinger plead causation because it concedes that the Bankruptcy Court, *not Defendants*, directed LightSquared to appoint the LightSquared Special Committee.   *See Turk* v. *Angel*, 293 A.D.2d 284, 284 (1st Dept. 2002) (affirming dismissal of tortious interference claim because "plaintiffs would not be able to demonstrate that defendants' conduct was a proximate cause of their alleged loss").

> **C.** **The Complaint Fails to State a Claim for Abuse of Process.**

> "The three essential elements of the tort of abuse of process are (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective."   *Tenore* v. *Kantrowitz, Goldhamer & Graifman, P.C.*, 76 A.D.3d 556, 557 (2d Dept. 2010) (citation omitted).   This improper collateral attack on the Bankruptcy Proceedings fails for at least the following three reasons.

> *First*, Harbinger has failed to allege that Defendants issued any process, which requires "some direction or demand that the person to whom it is directed . . . perform or refrain from the doing of some prescribed act and further requires that the process be issued by or filed

in a court." *Cimerring* v. *Merrill Lynch Mortg. Investors, Inc.*, 2012 WL 2332358, at *11 (Sup. Ct., Kings Cnty. June 13, 2012) (citation omitted).   Nowhere does Harbinger allege that Defendants filed, or the Court issued, anything "direct[ing] or demand[ing]" that Harbinger or anyone else do or refrain from doing anything.

*Second*, Harbinger does not allege facts establishing that Defendants issued process in a "perverted manner."  *Tenore*, 76 A.D.3d at 557.  The crux of Harbinger's claim is that LBAC made a bid for LightSquared's assets for less than their "true" value in order to divest Harbinger of its "right" to control LightSquared.   (Compl. ¶¶ 13, 106.)   However, there is nothing "perverted" about making a bid for assets for less than their "true" value.  Indeed, trying to acquire assets at the best price possible is the point of submitting a bid, which LightSquared was free to accept or reject.

*Third*, Harbinger has not alleged that Defendants used the bid to "obtain" the alleged "collateral objective."  *Tenore*, 76 A.D.3d at 557.  Harbinger claims that LBAC did not make its bid to buy the assets, but instead had the "sole purpose of stripping Harbinger of its equity interests and control rights under the Stockholders' Agreement."   (Compl. ¶¶ 267-68.) This is a distinction without a difference.  It is also wrong.  If LBAC (or anyone else) acquired LightSquared's assets in the bankruptcy, Harbinger would keep its equity interests in LightSquared, but LightSquared would then hold cash rather than the L-Band Spectrum.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the motion be granted and the Complaint be dismissed in its entirety with prejudice.

Dated:   New York, New York                         Respectfully submitted,
         November 2, 2015


/s/ Tariq Mundiya                                   /s/ Robert J. Giuffra, Jr.
Tariq Mundiya                                       Robert J. Giuffra, Jr.
James C. Dugan                                      Brian T. Frawley
WILLKIE FARR & GALLAGHER LLP                        Brian D. Glueckstein
787 Seventh Avenue                                  SULLIVAN & CROMWELL LLP
New York, New York  10019                           125 Broad Street
Telephone:  (212) 728-8000                          New York, New York  10004-2498
                                                    Telephone:  (212) 558-4000

*Counsel for Defendants Charles W. Ergen, SP
Special Opportunities LLC, and Special*             *Counsel for Defendants DISH Network
*Opportunities Holdings LLC*                        *Corporation and L-BAND Acquisition,
                                                    LLC*


/s/ Charles Bachman
Charles Bachman
Peter Friedman
O'MELVENY & MYERS LLP
7 Times Square Tower
New York, New York 10036
Telephone:  (212) 326-2000

*Counsel for Defendants Sound Point Capital
Management L.P. and Stephen Ketchum*